**AERONCA, INC., Plaintiff,**

v.

**Michael GORIN, et al., Defendants.**

**No. 80 Civ. 1509 (GLG).**

United States District Court,
S.D. New York.

April 12, 1983.

Reid & Priest, New York City, for plaintiff; Louis H. Willenken, John M. Nonna, Susan T. Dwyer, Christopher Connolly, New York City, of counsel.

Breed, Abbott & Morgan, New York City (Edward J. Ross, James D. Zirin, James J. Sabella, New York City, of counsel), and Wilson & McIlvaine, Chicago, Ill. (Charles W. Boand, Chicago, Ill., of counsel), for defendants Whalen, Duggan, Callanan, May and Kahn.

1. The three officers are Gerald Lee, Mervyn Silver, and Joseph Heilbrun. At all times relevant to this lawsuit, Gerald Lee was the Chairman of the Board, Chief Executive Officer, and a director of the Frigitemp Corporation; Mervyn Silver was the President, Executive Vice President, Chief Operating Officer, and a director of the Frigitemp Corporation; and Joseph Heilbrun was the Senior Vice President, Treasurer, and a director of the Frigitemp Corporation.

2. On March 20, 1978, Frigitemp petitioned for an arrangement pursuant to Chapter XI of the Bankruptcy Act in the Bankruptcy Court of the United States District Court for the Southern District of New York. According to Aeronca, the pendency of the bankruptcy proceeding is the only reason that Frigitemp was not named as a defendant in this action.

3. The partners are Michael Gorin, Joseph Whalen, Stephen Duggan, Patrick Callanan, Robert May, Stewart Kahn, and Michael Simon. The term "Andersen defendants," however, will refer only to Whalen, Duggan, Callanan, May, and Kahn because Simon has not been served and because the Court has received nothing to indicate that Gorin, who is represented by separate counsel, has joined in this motion.

## OPINION

GOETTEL, District Judge:

This is a diversity action by Aeronca, Inc. (Aeronca) against three officers of the Frigitemp Corporation (Frigitemp),[1] a New York Corporation that is now in bankruptcy,[2] and several partners of Arthur Andersen & Co. (the Andersen defendants),[3] a public accounting firm that, from 1973 until 1979, was the independent public accountant for Frigitemp.[4] Before this Court is the Andersen defendants' motion to dismiss the amended complaint.[5]

This lawsuit arises from Frigitemp's failure to make payments under a contract with Aeronca entered into in June 1973. Simply stated, Aeronca agreed, *inter alia,* to manufacture panels for installation by Frigitemp on naval vessels pursuant to a contract with Litton-Ingalls,[6] and Frigitemp agreed, *inter alia,* to make periodic progress payments to Aeronca. Soon after work began, however, Aeronca encountered difficulty in collecting the progress payments from Frigitemp; of the twenty-one invoices

It should also be noted that the Andersen defendants suggest that the action be dismissed as to Simon. Because over two years have passed since the amended complaint was filed, this Court agrees. Thus, the action is dismissed as to Simon unless Aeronca effectuates service within thirty days from the date of this opinion.

4. Aeronca has also mentioned an additional 20 John Doe defendants.

5. Aeronca originally named Arthur Andersen & Co. (Andersen) as a defendant in this action. Thereafter, Andersen moved to dismiss for lack of diversity jurisdiction, and Aeronca cross-moved to amend the complaint to name only those Andersen partners who were diverse to Aeronca and who had a connection with the auditing of Frigitemp's books. This Court granted both motions, Aeronca filed an amended complaint in September 1980, and the Andersen defendants answered the amended complaint in November 1980.

In March 1981, the Andersen defendants also filed a motion to dismiss for lack of diversity jurisdiction. This Court did not dismiss the action, but ordered that certain language referring to Arthur Andersen & Co. be stricken.

6. Litton-Ingalls is a division of Litton Systems, Inc., a subsidiary of Litton Industries, Inc.

submitted to Frigitemp between January 1974 and October 1975, eighteen were paid from nine to ninety-six days after their due dates, and four were never paid.

Frigitemp's failure to meet its obligations under the contract finally prompted Aeronca, in 1976, to bring suit against Frigitemp to collect on the unpaid invoices and to recover the costs incurred by delays allegedly caused by Frigitemp.[7] Aeronca's claims were never resolved, however, because, in 1978, the action was stayed as a result of Frigitemp's petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act. *See supra* note 2.

This action, which was commenced in 1980, is another attempt to recoup the losses Aeronca suffered as a result of its dealings with Frigitemp. Aeronca contends that, when it encountered difficulties in collecting the progress payments, it grew concerned about Frigitemp's financial condition and, therefore, requested copies of Frigitemp's financial statements audited and certified by Arthur Andersen & Co. for the years 1973–1976. It further alleges that it decided to continue work under the contract and to extend credit to Frigitemp for the amount of the unpaid invoices because the statements portrayed Frigitemp as a financially healthy company[8]—a false and misleading picture.[9] According to Aeronca, the Andersen defendants' conduct in preparing and certifying these statements subjects them to liability for common law fraud, aiding and abetting a common law fraud, and negligence.[10]

The Andersen defendants filed the present motion to dismiss in 1982. They

7. The suit was filed in the United States District Court for the Southern District of Ohio.

8. Aeronca also contends that it would not have commenced the 1976 lawsuit against Frigitemp, *see supra* note 7 and accompanying text, and expended over $200,000 in legal fees to prosecute the action if it had known Frigitemp's true financial condition.

9. Aeronca alleges that the financial statements were false and misleading in the following respects:

(a) gross profit from long-term contracts was materially overstated because the costs to Frigitemp of fulfilling those contracts were consistently understated;

(b) Frigitemp's reported income and current assets included sums representing amounts supposedly owed to Frigitemp for material costs and work done as additions to or changes from specifications under certain long-term contracts. Such amounts were materially overstated and included amounts for work not actually performed and for work which was not then billed to, or approved by, Frigitemp's customers; and

(c) Frigitemp's accounts receivable were overstated in the following respects, among others:

(1) Frigitemp was overbilling its customers;

(2) Frigitemp's reported unbilled amounts in material respects were not billable as receivables;

(3) payments received by Frigitemp were allocated improperly on current receivables to older receivables, thereby understating the amount of aged receivables of doubtful collectibility;

(4) the disputed claim reported in the 1976 Statements as a receivable in the sum of $8.9 million dollars was spurious and improperly documented and should not have been reported as a receivable;

(5) other claims for which work had not been performed by Frigitemp were reported as receivables; and

(6) progress payments received by Frigitemp from Litton Systems Inc., Ingalls Shipbuilding Division ("Litton") pursuant to the subcontract referred to in Paragraph 17 were misapplied; as a result progress payments to Aeronca pursuant to the Contract referred to in Paragraph 18 which were invoiced by Aeronca were not paid.
Amended Complaint ¶ 14.

It should also be noted that alleged misrepresentations in Frigitemp's financial statements have spawned four other actions that are pending before this Court, *Chemical Bank v. Arthur Andersen & Co.*, No. 79 Civ. 2474, *Manufacturers Hanover Trust Co. v. Arthur Andersen & Co.*, No. 79 Civ. 2533, *Security Pacific National Bank v. Arthur Andersen & Co.*, No. 79 Civ. 2928, and *Peerless Insurance Co. v. Arthur Andersen & Co.*, No. 80 Civ. 2556, as well as a settled class action involving a public offering, *Litowitz v. Arthur Andersen & Co.*, No. 78 Civ. 3100. *See generally Chemical Bank v. Arthur Andersen & Co.*, 552 F.Supp. 439 (S.D.N.Y. 1982) (motions to dismiss in the *Chemical, Manufacturers Hanover,* and *Security Pacific* cases denied).

10. Aeronca also alleges that the three officers of Frigitemp named as defendants in this action are liable for common law fraud.

contend that the complaint does not state a claim for fraud, that there is no tort of aiding and abetting a common law fraud, that the negligence claim fails because Aeronca was not in privity with the Andersen defendants, and that the negligence claims are barred by the statute of limitations. For the reasons stated below, this motion is granted in part and denied in part.

## I. *Fraud*

Turning first to the fraud claim, the Court notes that, to prevail on a claim for common law fraud, the plaintiff must prove that the defendant made a false representation of fact, that the defendant made the representation with scienter, that the defendant intended the plaintiff to act or to refrain from acting in reliance on the misrepresentation, that the plaintiff justifiably relied upon the misrepresentation in taking, or refraining from, action, and that the plaintiff sustained pecuniary loss as a result of this reliance. W. Prosser, Handbook of the Law of Torts § 105, at 685–86 (4th ed. 1971); *see Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 250 N.E.2d 214, 217, 302 N.Y.S.2d 799, 803 (1969). In this case, the only issue is whether the allegations of the complaint could support a finding of scienter. The Andersen defendants contend that the allegations of the complaint amount only to negligence and that, therefore, Aeronca's claim of fraud must be dismissed. This Court disagrees.

A false statement is made with scienter if it is made with knowledge that the statement is false. W. Prosser, *supra,* § 107, at 699–702. Additionally, recklessness can take the place of actual knowledge under New York law. As the New York Court of Appeals noted,

[a] representation certified as true to the knowledge of the accountants when knowledge there is none, a reckless misstatement, or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth, are all sufficient upon which to base liability. A refusal to see the obvious, a failure to investigate the doubtful, if sufficiently gross, may furnish evidence leading to an inference of fraud so as to impose liability for losses suffered by those who rely on the balance sheet.

*State Street Co. v. Ernst,* 278 N.Y. 104, 112, 15 N.E.2d 416, 419 (1938); *accord, Ultramares Corp. v. Touche,* 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931) ("Fraud includes the pretense of knowledge when knowledge there is none.").

In this instance, Aeronca alleges that the Andersen defendants knew that the information contained in the financial statements was materially false and misleading and that the statements would be relied upon by Aeronca and other creditors in extending credit to Frigitemp. Amended Complaint ¶ 16(a).[11] If Aeronca proves this allegation at trial, it will have satisfied the scienter requirement for common law fraud.[12] Thus, it has alleged scienter suffi-

11. Aeronca alleges that the Andersen defendants "knew or should have known" that the financial statements were false and misleading and that Aeronca would rely on the statements in extending credit to Frigitemp. As a matter of pleading, allegations in the disjunctive, when one of the alternatives is legally sufficient, is permissible. *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 924 (2d Cir. 1980).

12. The Court's conclusion that proof of actual knowledge will satisfy the scienter requirement in this case should not be taken as an indication that the Court believes that Aeronca's allegation of knowledge would satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. That question is not before this Court (nor was it before this Court when Ar-

thur Andersen & Co. moved to dismiss three related cases brought by four commercial banks, *see Chemical Bank v. Arthur Andersen & Co.,* 552 F.Supp. 439 (S.D.N.Y.1982); *see supra* note 9); the Andersen defendants have moved to dismiss the fraud claim solely for failure to state a claim upon which relief can be granted. The Court does note, however, that, putting aside the question whether a party that has answered the complaint should ever be allowed to prevail on a Rule 9(b) motion, it is unclear whether Aeronca's allegation of knowledge is sufficient under Rule 9(b). *Compare Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) *and Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 120–21 (2d Cir.1982) *with IIT, An International Investment*

ciently to state a claim against the Andersen defendants for common law fraud,[13] and it would be improvident to conclude at this juncture that there is no set of facts that would entitle Aeronca to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In reaching this conclusion, the Court is mindful of *Dworman v. Lee,* 83 A.D.2d 507, 441 N.Y.S.2d 90 (1st Dep't 1981), *aff'd,* 56 N.Y.2d 816, 438 N.E.2d 103, 452 N.Y.S.2d 570 (1982), a case heavily relied upon by the Andersen defendants. In *Dworman,* a case in which the plaintiffs sued Arthur Andersen & Co. for fraud and negligence in connection with the firm's preparation of Frigitemp's financial statements for the years 1973–1976, the Appellate Division held that a complaint similar to Aeronca's amended complaint did not state a cause of action for fraud.[14] It noted that

> [n]otwithstanding the nomenclature of the first and second causes sounding in fraud and the language in the third cause

of action that defendants "knew or should have known the falsity of their representations," we find that the first, second and third causes essentially plead negligence. These causes are not transformed into causes of action in fraud merely by pleading conclusory allegations of fraud.

*Id.* at 507, 441 N.Y.S.2d at 91. Because the New York Court of Appeals summarily affirmed this decision and because the *Dworman* complaint is quite similar to Aeronca's amended complaint, the Andersen defendants argue that this Court must follow *Dworman* and dismiss Aeronca's amended complaint as well.

It is unclear whether the Appellate Division dismissed the *Dworman* complaint for failure to plead the circumstances of the alleged fraud with particularity, N.Y.Civ. Prac.Law § 3016(b) (McKinney 1974), or for failure to state a cause of action, N.Y.Civ. Prac.Law § 3211(a)(7) (McKinney 1970).[15]

---

*Trust v. Cornfeld,* 619 F.2d 909, 923–24 (2d Cir.1980). Of course, had this been a motion pursuant to Rule 9(b) and had the complaint been dismissed, the Court probably would have given Aeronca leave to replead.

**13.** Moreover, even if actual knowledge had not been pleaded, Aeronca argues that the amended complaint would still state a claim for fraud because it has alleged facts from which the trier of fact could conclude that the Andersen defendants were reckless in preparing and certifying the statements. For example, Aeronca alleges that, in the financial statements, Frigitemp's gross profits from long-term contracts were overstated because the costs of performing the contracts were consistently understated. It also alleges that the Andersen defendants recognized "that there were weaknesses in internal control in the area of accounting for long-term contracts at Frigitemp," Amended Complaint ¶ 16(c), but accepted Frigitemp's estimates of the figures relating to these long-term contracts without proper investigation. At this point, the Court cannot say, as a matter of law, that no reasonable person could conclude that the Andersen defendants acted recklessly. Whether this view will change will have to await a fuller development of the facts.

**14.** The Appellate Division also dismissed the negligence claims because of the rule enunciated in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931). *Dworman v. Lee, supra,* 83 A.D.2d at 507, 441 N.Y.S.2d at 91; *see infra* pt. III.

**15.** The Andersen defendants believe it clear that the *Dworman* complaint was dismissed for failure to state a cause of action. Their analysis is as follows:

> [The plaintiff in *Dworman* contended that the Appellate Division had dismissed the complaint for failure to plead the circumstances of the alleged fraud with particularity.] Thus, the *Dworman* brief in the New York Court of Appeals devoted Point III to the position that "THE FRAUD CAUSES OF ACTION ARE PLEADED WITH SUFFICIENT SPECIFICITY," stated that "The Appellate Division held that the fraud causes of action had not been pleaded with sufficient specificity," and argued, as does *Aeronca* here, that the allegations of fraud are sufficient to meet the requirements of sections 3013 and 3016(b) of the Civil Practice Law and Rules. It concludes this point [by repeating] that "the plaintiff's [sic] fraud allegations have been pleaded with sufficient specificity to permit the case to proceed through discovery."
>
> However, the Court of Appeals rejected this misstatement of the decision of the Appellate Division, which the Court of Appeals affirmed because it was plain that the [Appellate Division] was not dealing with the requisite particularity or specificity under sections 3013 and 3016(b), but rather held that the [*Dworman* complaint failed to state a cause of action for fraud].

If the complaint was dismissed pursuant to section 3016(b), *Dworman* would not require dismissal of Aeronca's fraud claim because *Dworman* would not be binding on this Court. The form of pleading in diversity cases is governed by the Federal Rules of Civil Procedure, *see Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), in this instance, Rule 9(b). Moreover, the question whether the allegations of the complaint satisfy the requirements of Rule 9(b) is not before this Court, *see supra* note 12; the Andersen defendants have moved to dismiss the fraud claim solely for failure to state a claim upon which relief can be granted, *see* Fed.R.Civ.P. 12(b)(6).

█ Even if the *Dworman* complaint was dismissed for failure to state a cause of action, this Court does not think it prudent to dismiss Aeronca's fraud claim solely on the basis of *Dworman.* Both parties apparently agree that the *Dworman* complaint and Aeronca's amended complaint are quite similar. Thus, the complaint before the Appellate Division contained rather detailed allegations that Frigitemp's financial statements were materially false and misleading and that Arthur Andersen & Co. knew that the statements were materially false and misleading. Clearly, unless *Dworman* altered the law governing fraud claims in New York—and there is nothing in the relatively short opinion to indicate that the law was being altered—proof that the defendant knew the falsity of the representations would sustain the plaintiff's claim for fraud, assuming that the other elements of the tort had been satisfied. For the Appellate Division to have concluded that the *Dworman* complaint did not state a cause of action for fraud, therefore, it must have looked beyond the pleadings and determined that proof of the defendant's knowledge was unlikely. This Court, however, cannot go beyond the pleadings and make such a determination. A federal court's role on a motion to dismiss for failure to state a claim is a limited one: it must accept the plaintiff's well-pleaded allegations at face value, *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969), construe the allegations in the complaint in the plaintiff's favor, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102 (footnote omitted). *See generally Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982). As Aeronca has alleged facts that, if proven, could entitle it to prevail on its fraud claim, this Court cannot grant the Andersen defendants' motion at this time.

## II. *Aiding and Abetting*

Aeronca also claims that the Andersen defendants are liable for aiding and abetting a common law fraud. The Andersen defendants, however, argue that the claim must be dismissed because there is no such tort. This Court disagrees.

█ Although the Seventh Circuit has held that there is no such tort as aiding and abetting a common law fraud, *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 452–53 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), we are unaware of any New York court or Federal court in this Circuit that has reached the same conclusion. Indeed, Aeronca has pointed out two cases in this District in which defendants have been held liable for aiding and abetting a common law fraud. *Cronin v. Executive House Realty,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,670, at 93,353–56 (S.D.N.Y.1982); *Kingstone v. Oceanography Development Corp.,*

Reply Memorandum in Support of Motion to Dismiss at 41–42 (footnote and citations omitted).

This Court, however, does not see how the Court of Appeals decision clarifies matters. The Court of Appeals simply affirmed the Appellate Division's order, "with costs, for the reasons stated in the memorandum at the Appellate Division." *Dworman v. Lee,* 56 N.Y.2d 816, 816, 438 N.E.2d 103, 103, 452 N.Y.S.2d 570, 570 (1982).

[1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,387, at 93,349 n. 9 (S.D.N.Y. 1978); *see In re Investors Funding Corp. Securities Litigation,* 523 F.Supp. 533, 545–46 (S.D.N.Y.1980) (claim for aiding and abetting a common law fraud survived a motion for summary judgment). Moreover, the Second Circuit's recognition of a cause of action for aiding and abetting a violation of the antifraud provisions of the securities laws, *see Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 575 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), leads this Court to believe that, in the absence of New York State authority to the contrary, the Second Circuit would also recognize the tort of aiding and abetting a common law fraud. Thus, this Court is not prepared to dismiss Aeronca's claim at this time.

### III. *Negligence*

Aeronca's final claim against the Andersen defendants is for negligently preparing and certifying the financial statements. The question that arises is whether, even if the Andersen defendants were negligent, they can be liable to Aeronca.

The leading case on the question of accountants' liability for negligence is *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931). In *Ultramares,* the plaintiff was a factor that made several loans to Fred Stern & Co., an importer and seller of rubber, in reliance on a financial statement prepared and certified by the defendant accounting firm. When Stern went bankrupt without repaying all of its debts to the plaintiff, the plaintiff sued the defendant for negligently preparing and certifying the financial statement and for fraud. *Id.* at 173–76, 174 N.E. at 442–43. The New York Court of Appeals, through Chief Judge Cardozo, dismissed the negligence claim, holding that, even though the accountant was

aware that the financial statement would be used to obtain credit, he could be liable for negligently preparing and certifying that statement only to those who stand in privity with him. *Id.* at 189, 174 N.E. at 448 ("if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made"); *accord, State Street Trust Co. v. Ernst,* 278 N.Y. 104, 111, 15 N.E.2d 416, 418 (1938). According to Judge Cardozo,

> [i]f liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.

*Id.* 255 N.Y. at 179–80, 174 N.E. at 444.

The rule of *Ultramares* still remains the law of New York. *See Dworman v. Lee, supra.* In *White v. Guarente,* 43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977), however, the New York Court of Appeals carved out an apparent exception to the rule. In *White,* one of the defendants was an accounting firm [16] that had been retained to perform an audit and prepare the tax returns of Guarante-Harrington Associates, a limited partnership consisting of two general partners and approximately forty limited partners. (The audit was required by the partnership agreement.) The plaintiff, a limited partner, sued the accounting firm for negligence, claiming that, in performing the audit, the firm was negligent in not ascertaining that the two general partners were withdrawing their capital contributions to the partnership in violation of the partnership agreement. *Id.* at 358–60, 372 N.E.2d at 317–18,

---

**16.** The firm was Arthur Andersen & Co.

401 N.Y.S.2d at 476–77. The court held that, "at least on the facts here," the accounting firm could be liable to the plaintiff for negligence. *Id.* at 358, 372 N.E.2d at 317, 401 N.Y.S.2d at 476. Writing for a unanimous court, Judge Cooke noted that the accounting firm

> was retained to perform an audit and prepare the tax returns of Associates, known to be a limited partnership, and the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in the fixed, definable and contemplated group whose conduct was to be governed.

17. In paragraph 28 of the Amended Complaint, Aeronca alleges that

> Each of the defendants knew, or should have known, and intended that the Statements as prepared, certified and published would be disseminated to Aeronca and would be read, analyzed and relied upon by Aeronca in extending financial accommodations to Frigitemp, in continuing work under the Contract and ultimately in pursuing legal remedies against Frigitemp following completion of its performance under the Contract. In light of Aeronca's status as a creditor-subcontractor, Aeronca's reliance on said Statements was foreseeable by defendants.

In paragraph 39 of the Amended Complaint, Aeronca alleges that

> By reason of the foregoing, the Andersen defendants, through their negligence, gross negligence and reckless disregard for the accuracy of their Statements and Opinions concerning the finances of Frigitemp, breached the duty owed to Aeronca as a third-party beneficiary of the contractual engagement of the Andersen defendants by Frigitemp. Aeronca was a member of a fixed and definable group (i.e., creditors and subcontractors) of which the Andersen defendants were aware and by reason of which the Andersen defendants, and each of them, knew or should have known that Aeronca would rely and govern its conduct based upon Andersen's financial Statements. Breach of the foregoing duty caused Aeronca to be damaged in a sum in

*Id.* at 361–62, 372 N.E.2d at 318–19, 401 N.Y.S.2d at 477–78. He also added that, unlike the plaintiff in *Ultramares,* the plaintiff in *White* sought "redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement." *Id.* at 363, 372 N.E.2d at 320, 401 N.Y.S.2d at 479.

According to Aeronca, its status as a creditor-subcontractor of Frigitemp made it, like the plaintiff in *White,* a member of a fixed and definable group whose reliance on the financial statements was, or at least should have been, foreseen by the Andersen defendants.[17] Accordingly, it argues that this case falls outside the rule of *Ultramares* and within the exception created by *White.* This Court disagrees.

Aeronca reads *White* much too broadly.[18] Although there is language in *White* that,

> excess of $1,600,000, together with interest thereon.

18. In interpreting *White,* Aeronca relies heavily on *Credit Alliance Corp. v. Arthur Andersen & Co.,* No. 21064/81 (N.Y.Sup.Ct. June 22, 1982), in which a justice of the New York Supreme Court stated that a plaintiff in a position similar to Aeronca's could sue an accounting firm for negligently preparing and certifying a financial statement. *Id.,* slip op. at 3–5; *cf. Chemical Bank v. National Union Fire Insurance Co.,* 74 A.D.2d 786, 787, 425 N.Y.S.2d 818, 819 (1st Dep't 1980) ("If it be shown that a real estate appraiser, retained by a property owner to make an appraisal that he knows the owner will use to obtain financing, makes it in a grossly negligent manner so as to inordinately overstate the value, we are not ... prepared to hold the appraiser exempt from liability to the damaged financing party."). This Court declines to follow *Credit Alliance* for several reasons. First, this Court is not bound by the interpretation of *White* and *Ultramares* in *Credit Alliance. See O'Connor v. Lee-Hy Paving Corp.,* 579 F.2d 194, 205 n. 15 (2d Cir.), *cert. denied,* 439 U.S. 1034, 99 S.Ct. 639, 58 L.Ed.2d 696 (1978). Second, the statements in *Credit Alliance* that the plaintiff had a cause of action against the accounting firm for negligence were dicta because the court held that the negligence claim was barred by the statute of limitations. *Credit Alliance Corp. v. Arthur Andersen & Co., supra,* slip op. at 5–7. Finally, this Court believes that the *Credit Alliance* court read *White* too broadly. *See infra.*

when taken out of context, supports Aeronca's position, the holding was a narrow one. *See id.* at 358, 372 N.E.2d at 317, 401 N.Y. S.2d at 476.[19] There was no indication that the court questioned the vitality of the *Ultramares* rule; indeed, the court deemed its decision consistent with Judge Cardozo's opinion. *See id.* 43 N.Y.2d at 360–63, 372 N.E.2d at 318–20, 401 N.Y.S.2d at 477–79. The court simply held that the accounting firm assumed a duty to the limited partners to act without negligence. The duty arose because the nature of the agreement between the accounting firm and the limited partnership—to perform an audit and prepare the partnership's tax returns—and the circumstances surrounding the agreement—the audit was required by the partnership agreement—made it clear that the firm's performance was for the benefit of the limited partners, who would rely on the audit and the tax returns of the partnership to prepare their own tax returns. *Id.* 372 N.E.2d at 318–20, 401 N.Y.S.2d at 477–79. According to the court, "the furnishing of the audit and tax return information [to the limited partners], necessarily by virtue of the relation, was one of the ends and aims of the transaction." *Id.* 43 N.Y.2d at 362, 372 N.E.2d at 319, 401 N.Y.S.2d at 478.[20]

It should also be noted that, in its brief, Aeronca states that the court in *White* "acknowledged that once plaintiff pleads that the defendant knew or should have known that its certified financial statements would be relied upon by third persons in plaintiff's position, the complaint is sufficient to withstand a motion to dismiss for lack of privity." Memorandum of Law in Opposition to Motion to Dismiss at 33. The Court, however, finds no such statement in *White.*

19. At the outset of the opinion, the court stated that

[t]he issue posed is whether accountants retained by a limited partnership to perform auditing and tax return services may be held responsible to an identifiable group of limited partners for negligence in the execution of those professional services. We hold that, at least on the facts here, an accountant's liability may be so imposed.

*Id.* 43 N.Y.2d at 358, 372 N.E.2d at 317, 401 N.Y.S.2d at 476.

20. The "ends and aims of the transaction" language comes from *Ultramares.* In *Ultramares,* the plaintiff argued that a previous opinion written by Judge Cardozo, *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922), required the court to allow the plaintiff to sue the accounting firm for negligence. The court disagreed. Judge Cardozo wrote that

[i]n *Glanzer v. Shepard,* the seller of beans requested the defendants, public weighers, to make return of the weight and furnish the buyer with a copy. This the defendants did. Their return, which was made out in duplicate, one copy to the seller and the other to the buyer, recites that it was made by order of the former for the use of the latter. The buyer paid the seller on the faith of the certificate which turned out to be erroneous. We held that the weighers were liable at the suit of the buyer for the moneys overpaid. Here was something more than the rendition of a service in the expectation that the one who ordered the certificate would use it thereafter in the operations of his business as occasion might require. Here was a case where the transmission of the certificate to another was not merely one possibility among many, but the "end and aim of the transaction," as certain and immediate and deliberately willed as if a husband were to order a gown to be delivered to his wife, or a telegraph company, contracting with the sender of a message, were to telegraph it wrongly to the damage of the person expected to receive it. The intimacy of the resulting nexus is attested by the fact that, after stating the case in terms of legal duty, we went on to point out that viewing it as a phase or extension of *Lawrence v. Fox,* supra [20 N.Y. 268], or *Seaver v. Ransom,* supra [224 N.Y. 233, 120 N.E. 639], we could reach the same result by stating it in terms of contract. The bond was so close as to approach that of privity, if not completely one with it. Not so in the case at hand. No one would be likely to urge that there was a contractual relation, or even one approaching it, at the root of any duty that was owing from the defendants now before us to the indeterminate class of persons who, presently or in the future, might deal with the Stern Company in reliance on the audit. In a word, the service rendered by the defendant in *Glanzer v. Shepard* was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the formal promisee. In the case at hand, the service was primarily for the benefit of the Stern Company, a convenient instrumentality for use in the development of the business, and only incidentally or collaterally for the use of those to whom Stern and his associates might exhibit it thereafter.

*Ultramares Corp. v. Touche, supra,* 255 N.Y. at 182–83, 174 N.E. at 445–46 (citations omitted). In *White,* Judge Cooke wrote that the limited partners were like the buyers in *Glanzer.*

This case presents quite a different picture. Preparing financial statements for a public corporation is far different from conducting an audit and preparing the tax returns of a limited partnership. The Andersen defendants prepared Frigitemp's financial statements for general public distribution. *See* Amended Complaint ¶ 13. Preparation of the statements so that Aeronca and other subcontractors could utilize them was certainly not one of the "ends and aims of the transaction" as that phrase was used in *White. See supra* note 20 and accompanying text.[21] Although the Andersen defendants may have, or at least should have, realized that individuals and institutions, including Aeronca, would rely on the financial statements in extending credit to Frigitemp, such a realization is insufficient to create a duty to act without negligence. *Ultramares Corp. v. Touche, supra*, 255 N.Y. at 173–74, 179–89, 174 N.E. at 442, 444–48.

Aeronca is unpersuasive in its argument that there is a difference between an existing creditor[22] and a new creditor[23] when both have made a financial decision to extend credit in reliance on the same certified financial statement. Although the likelihood that a corporation will seek financing from an existing creditor may be greater than the likelihood that it will seek financing from another source, any difference in the level of foreseeability is not great enough to warrant allowing an existing creditor, but not a new creditor, to sue the accountant for negligently preparing and certifying the financial statement.[24] This Court believes that if an existing creditor is allowed to sue, all creditors should be allowed to sue. Of course, whatever the merits of such a course of action, it cannot be taken absent an alteration of the *Ultra-*

*mares* rule by the New York Court of Appeals. Thus, the Andersen defendants' motion to dismiss is granted as to the negligence claim[25].

SO ORDERED.

Thus, the court viewed the decision in *White* as consistent with the decision in *Ultramares.*

21. It can also be argued that, as limited partners, the plaintiffs actually stood in privity with the accounting firm.

22. An existing creditor would be one who was a creditor when the audit was performed.

23. A new creditor would be one who was not a creditor when the audit was performed.

24. Indeed, although the plaintiff in *Ultramares* had never advanced money to Fred Stern & Co., there is nothing in Judge Cardozo's opinion to indicate that the result would have been different had the plaintiff been an existing creditor when the audit was performed.

25. In light of the dismissal of the negligence claim, the Court need not consider the Andersen defendants' argument that the negligence claim is barred by the statute of limitations.