**In re COLECO SECURITIES LITIGATION.**

**This Document Relates to all Actions.**

**No. 83 CIV 9199 (LBS).**

United States District Court,
S.D. New York.

Aug. 10, 1984.

Berger & Montague, P.C., Philadelphia, Pa., for Plaintiffs; Stanley R. Wolfe, Philadelphia, Pa., of counsel.

Greenfield, Chimicles & Lewis, Haverford, Pa., for plaintiff Stein and the Derivative Count; Richard D. Greenfield, Haverford, Pa., of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Coleco Industries, Inc.; Richard Seltzer, New York City, of counsel.

Snow, Becker, Kroll, Klaris & Krauss, P.C., New York City, for the individual defendants; Jay L. Himes, New York City, of counsel.

## OPINION

SAND, District Judge.

This case involves 1) a purported class action brought on behalf of those persons who purchased common stock and call options of Coleco Industries, Inc. ("Coleco") from May 27, 1983 to September 29, 1983 and who continued to hold these investments on September 30, 1983, and 2) a derivative suit brought on behalf of Coleco. The alleged class has yet to be certified. Defendants in the class action include Coleco and certain of its officers. These officers are also defendants in the derivative suit; one Bruce Stein, an investor in Coleco, is plaintiff in the derivative suit.[1]

The allegations in this case center around Coleco's introduction of its "Adam" home computer system in 1983. The Adam was intended to be a substantial advance in low-cost home computer technology. Designed to retail at $600., the system would be fully integrated, offering mass memory storage, complete software, a typewriter keyboard, word processing, and letter-quality printing capability all in one package. Assembling a similar system from components on the market in 1983 would have cost substantially more than $600. Coleco projected sales of 500,000 Adam units in 1983 and record earnings for the year. In fact, Coleco achieved only a small fraction of these expected sales and reported a 7.4 million dollar loss in 1983.

In Count I of the Consolidated and Amended Complaint ("complaint"), the class plaintiffs allege *inter alia* that defendants' statements concerning Adam during the class period were knowingly or recklessly false, and constitute fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Count II alleges fraud in violation of state and common law. Count III charges "negligent misrepresentation" in violation of state law. The derivative claim is asserted in Count IV.

Defendants now move (1) to dismiss Counts I and II for failure to plead fraud with the requisite particularity, *see* F.R. Civ.P. 9(b), (2) to dismiss Count III for failure to state a claim upon which relief can be granted, *see* F.R.Civ.P. 12(b). The individual defendants move to dismiss the derivative count for failure to state a claim or, alternatively, to join "indispensable parties" on their derivative claim under F.R. Civ.P. 19.

### Rule 9(b)

■ Rule 9(b) of the Federal Rules of Civil Procedure provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

This rule aims largely to provide the defendant fair notice of the basis of plaintiff's claim and to protect defendant's reputation from groundless accusations of fraud incited by the possibility of an *"in terrorem* increment" in the settlement value of a lawsuit. *See generally Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Defendants argue that the complaint fails to satisfy Rule 9(b) principally because it does not allege sufficient facts

---

**1.** Coleco is not yet a party in the derivative suit. The defendants in the derivative suit have usually been referred to as the "individual defendants" in this Opinion.

giving rise to a reasonable inference of scienter. Moreover, counsel for defendants represented at oral argument that, even when plaintiffs' submissions outside the pleadings are considered, no facts support an inference that defendants knowingly or recklessly deceived the investing public during the relevant time period.

We believe defendants' contentions are without merit and that the complaint as drafted satisfies Rule 9(b).

Rule 9(b), of course, imposes no requirement of prolixity, *see Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 911 (S.D.N.Y.1983). A concise summary of plaintiffs' contentions as to scienter is set forth in paragraph 17 of the complaint:

Defendants' intent and conduct, as set forth below, were calculated to promise delivery of a finished retail product for Christmas sales in 1983, which product was neither developed, perfected nor capable of massive retail delivery by that date and which defendants either knew they could not deliver, or had no reasonable basis to believe they could deliver, as represented.

Having laid the groundwork, the complaint then goes on to describe the precise statements and omissions to which objection is taken. For example, plaintiffs cite statements by defendant principals made in late May and early June 1983 touting the Adam product and predicting record sales (¶¶ 20–21). On June 6, 1983, Coleco is alleged to have placed a full page ad in the Wall Street Journal introducing the computer system (¶ 23). *See also* ¶ 36 (summarizing misrepresentations and omissions). The complaint then alleges that, while engaged in such promotional activity, defendants "knew that Coleco had not yet solved serious engineering problems which remained before Adam could be sold as represented. Despite these difficulties, Coleco continued to deny or minimize these troubles publicly and to reaffirm the delivery deadlines" (¶ 24).

Granted these engineering difficulties are described in greater detail in Plaintiffs' Memorandum of Law and we would expect greater specificity in a pretrial order submitted upon completion of discovery, the above mentioned allegations, however, are nonetheless sufficiently specific to inform defendants of the precise nature of charges levied. With respect to the issue of scienter, the complaint alleges that the individual defendants, "[b]ecause of their executive and managerial positions with Coleco," had intimate knowledge of the "business, finances and future business prospects" of Coleco (¶ 10; *see also* ¶ 37). The introductory paragraph 17 asserts that performance predictions detailed in the complaint were made recklessly or with knowledge of their falsity in light of serious production problems. Paragraph 27 read in conjunction with paragraphs 24, 26, 28 makes clear that plaintiffs are asserting that no reasonable person would have made the statements delineated in the complaint in light of these production problems. Scienter may also be inferred by the insider sales referred to in *inter alia*, paragraph 37 of the complaint. Finally, the fact that Coleco's performance fell so far short of expectations does not necessarily make this a case of alleged "fraud by hindsight," and instead may reflect on the bona fides of the well publicized predictions. *Cf. Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489–90 (9th Cir.1974) (discussing relevance of prediction in light of actual performance).

■ In sum, we find the complaint specific and narrowly drawn with respect to the time, place, manner and content of the alleged fraud. Defendants would seemingly require the pleadings to expose a "smoking gun" evidencing fraud or perfunctory repetitions of the allegation that, given extant production problems, no reasonable company principal acting in good faith would have made the statements that were in fact made. Surely this is not the intent of Rule 9(b). Nor does the Rule require the pleading of expert testimony on the development and state of the art of the home computer. *See Somerville*, 576 F.Supp. at 909. Rather, the Rule must be read in conjunction with Rule 8 requiring a "short and plain" statement, *see Ross, supra*, 607 F.2d at 557 n. 20, and the defend-

ants must merely be given "a reasonable opportunity to answer the complaint and must be given adequate information to frame a response." *Id.* at 557–58. The pleading before us satisfies this standard. We further see no need to direct plaintiffs to transpose the more specific allegations contained in the memorandum into the complaint, in view of the defendants' expressed willingness to consider these allegations in this motion.

Bearing in mind Judge Friendly's caveat that each 9(b) case "necessarily rests on its particular facts," *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978), we have reviewed the cases brought to our attention in light of the issues currently raised. We find the pleading before us well within the category of complaints that courts have found sufficient. *See, e.g., ITT v. Corn-feld*, 619 F.2d 909, 923 (2d Cir.1980) (statement that defendants "knew" of "material misrepresentations of facts and material omissions" coupled with list of "five major misrepresentations and omissions" satisfies 9(b)); *Somerville, supra*, 576 F.Supp. at 911 (individual identifications of corporate insiders unnecessary). For this reason, and those previously mentioned, we deny defendants' motion to dismiss the complaint under F.R.Civ.P. 9(b).

*Negligent Misrepresentation*

■ Count III of the complaint asserts that defendants "negligently omitted to state material facts necessary ... to make the statements made ... not misleading and necessary" to inform fully "investors and prospective investors" in Coleco securities. Complaint ¶ 51. This count is premised on the alleged duty of care owed to "*all* pre-existing and potential shareholders." Plaintiffs' Memorandum of Law in Opposition, p. 36 (emphasis in original). Defendants argue that this Count is not cognizable under relevant state law, and seek dismissal of it for failure to state a claim upon which relief may be granted. F.R.Civ.P. 12(b). For the following rea-

sons, we grant defendants' application and dismiss Count III.

Preliminarily, we observe that at least one federal court has declined to certify a class on the issue of negligent misrepresentation due to potential differences in state law applicable to the various plaintiffs, *see McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Ca.1982). We reach defendants' motion to dismiss at this stage, prior to the scheduled motion for class certification, because the litigants have in essence limited our scope of examination to the common law of either New York or Connecticut.[2] *Compare Sharp v. Coopers & Lybrand*, 457 F.Supp. 879, 885 (E.D.Pa. 1978), *aff'd*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982) (in class action for common law negligence, neither party indicated that a particular state law should govern). We assume, solely for the purposes of this motion and without prejudice to any further relevant applications, that either New York or Connecticut law controls the outcome here.

We do not believe that Count III states a claim under either New York or Connecticut common law.

The seminal opinion in this case was written by Chief Judge, later Justice, Cardozo, writing for a unanimous New York Court of Appeals in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). There, the evidence established that plaintiff loaned money to a firm engaged in the rubber business in reliance on a balance sheet prepared by defendant, a firm of public accountants. The jury, instructed on theories of both negligent misrepresentation and fraud, returned a verdict for plaintiff. Judge Cardozo held that an action for negligent (as opposed to fraudulent) misrepresentation could not be maintained under these circumstances:

> The defendants owed to their employer a duty imposed by law to make their certificate without fraud, and a duty

**2.** Plaintiffs argue Connecticut law controls this cause of action; defendants believe New York law should be applied.

growing out of contract to make it with the care and caution proper to their calling. Fraud includes the pretense of knowledge when knowledge there is none. To creditors and investors to whom the employer exhibited the certificate, the defendants owed a like duty to make it without fraud, since there was notice in the circumstances of its making that the employer did not intend to keep it to himself. ... A different question develops when we ask whether they owed a duty to these to make it without negligence. If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.

This language was cited favorably by the United States Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214 n. 33, 96 S.Ct. 1375, 1391 n. 33, 47 L.Ed.2d 668 (1976) (holding that § 10(b) of the Securities Exchange Act of 1934 requires proof of scienter and does not impose liability for negligent conduct alone), and the vitality of the *Ultramares* holding was recently affirmed by the New York Court of Appeals in *White v. Guarente*, 43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977). *See also Aeronca, Inc. v. Gorin*, 561 F.Supp. 370, 376 (S.D.N.Y.1983) ("The rule of *Ultramares* still remains the law of New York.").

We find no valid distinction between *Ultramares* and this case. Indeed, the language quoted above refers to both investors and creditors. Certainly, the theory of duty urged by plaintiffs would be as far reaching as that rejected in *Ultramares*. While plaintiffs assert such liability is "limited," it is limited only in a semantic sense. Retailers, investors, and creditors, foreseeable and perhaps unforeseeable, would

have a cause of action under plaintiffs' theory.[3]

Though there have been what are called "exceptions" to *Ultramares*, these have not been, for the most part, exceptions in the proper sense, but rather were recognized by Judge Cardozo in *Ultramares* itself. For example, plaintiff may sue defendant for negligent misrepresentation where "[t]he bond [between them] was so close as to approach that of privity, if not completely one with it." 174 N.E. at 446. In addition, where the information supplied is primarily for the benefit of a third party and constitutes the "end and aim" of a transaction between those in privity, the third party may sue a negligent supplier of information though not in privity with him. *See, e.g., Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922) (Cardozo, J.) (cited in *Ultramares;* suit by buyer of beans versus "public weigher" who issued certificate attesting to weight of beans). As Chief Judge Cardozo stated, borrowing language from Judge Pound,

" '[N]egligent words are not actionable unless they are uttered directly, with knowledge or notice that they will be acted on, to one to whom the speaker is bound by some relation of duty, arising out of public calling, contract or otherwise, to act with care if he acts at all.' "

*Ultramares*, 174 N.E. at 447 (citing *Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp.*, 245 N.Y. 377, 381, 157 N.E. 272 (1927)).

The rationale of *Ultramares* was following in *White v. Guarente, supra*, where the New York Court of Appeals sustained an action by a limited partner against an accounting firm based on negligent rendition of professional services:

Here, the services of an accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components (see *Ultramares Corp. v. Touche*, 255 N.Y. 170, 182–185,

---

**3.** Interestingly, plaintiffs' complaint is predicated largely on statements directed at retailers, not investors or shareholders. See Complaint ¶ 17.

174 N.E. 441, 445–447, *supra* ). The instant situation did not involve prospective limited partners, unknown at the time and who might be induced to join, but rather actual limited partners, fixed and determined.

43 N.Y.2d at 361–62, 372 N.E.2d 315, 401 N.Y.S.2d 474.

Relying on *Guarente* and *Ultramares,* a court in this district recently dismissed a claim based on negligent preparation of financial statements asserted by creditors of a public corporation against the accountants who prepared the corporation's financial statement. Despite the foreseeability of creditor reliance, preparation of statements for use by creditors was "certainly not one of the 'ends and aims of the transaction,'" and hence, the creditors' claim would not lie under New York law. *See Aeronca, Inc., supra,* 561 F.Supp. at 376–379. *See also Milliner v. Elmer Fox and Co.,* 529 P.2d 806, 808 (Utah Supreme Ct. 1974) (rejecting claim brought by stockholder based on alleged negligent audit because "[a] future purchaser of shares of stock of a corporation ... belongs to an unlimited class of equity holders who could not be reasonably foreseen as a third party who would be expected to rely on a financial statement prepared by an accountant for the corporation").

Count III, of course, proceeds on behalf of a classically "faceless or unresolved class of persons," prospective investors, and must be dismissed under the reasoning of *Ultramares* and *Guarente.* Plaintiffs' attempts to reduce this case to one involving the duty of due diligence owed by a director to a corporation and its shareholders are unavailing, and citations to such cases inapposite. Plaintiffs have put forward no support for an extension of director's liability to the investing community, nor are we aware of any. Though perhaps accountants' liability has been extended over the years, the independent accountant's unique public function, *see, e.g., United States v. Arthur Young & Co.,* ——— U.S. ———, ———, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984), does not find a close parallel in a director's or officer's obligation to prospective shareholders. Under these circumstances, we hold that Count III must be dismissed under New York law.[4]

We do not believe that Count III fares any better under Connecticut law. We are aware of no significant differences between New York and Connecticut law on the issue of negligent misrepresentation. The Connecticut cases recognizing a cause of action for negligent misrepresentation fit easily within the category of "exceptions" noted by Judge Cardozo in *Ultramares.* They involve fiduciary duty, privity, or a "bond ... so close as to approach that of privity." *See, e.g., J. Frederick Scholes Agency v. Mitchell,* 191 Conn. 353, 464 A.2d 795 (1983) (action based on worthless check issue to plaintiff by defendant); *Johnson v. Healy,* 176 Conn. 97, 405 A.2d 54 (1978) (action based on representations made by defendant-seller of real estate to plaintiff-purchaser of real estate); *Richard v. A. Waldman & Sons, Inc.,* 155 Conn. 343, 232 A.2d 307 (1967) (same); *Boucher v. Valus,* 6 Conn.Cir. 661, 298 A.2d 238 (1972) (representation by insurance department to insured about scope of coverage).

The Connecticut courts, like the New York courts, have thus recognized a duty to refrain from negligent or innocent misstatements owed to a narrow class of beneficiaries. While the Connecticut courts have not expressly faced the question posed in *Ultramares,* we are confident that they would follow the standards espoused in *Ultramares* and its progeny. *Cf. Gediman v. Anheuser Busch, Inc.,* 299 F.2d 537, 544 n. 6 (2d Cir.1962) (case involving negligent misstatement; where relevant Missouri law neither pleaded nor proved,

---

**4.** We have reviewed the New York State Appellate Division's 3–2 decision in *Credit Alliance Corp. v. Arthur Andersen & Co.,* 101 A.D.2d 231, 476 N.Y.S.2d 539 (1984), which rests almost exclusively on the accountant's status as "public watchdog," *see Arthur Young, supra,* ——— U.S. at ———, 104 S.Ct. at 1503. We are uncertain whether this Opinion represents a significant departure from *Ultramares* and *Guarente,* and if so, whether it will be followed by the New York Court of Appeals.

federal court may "presume 'that the common law still prevails there and that it is the same as the common law of New York.'") (citing authority). The *Ultramares* holding is supported by the common law authorities and the Connecticut courts, in discussing liability for negligent misrepresentation, have traditionally referred to such authority. *See, e.g.,* W. Prosser, Law of Torts § 107 at 705 (4th ed. 1971) (discussing English "special relation" standard); Restatement (Second) of Torts § 552 & Comment a (1977) (liability extends only to limited group of persons, narrower than liability for fraud); 37 Am.Jur.2d "Fraud and Deceit" § 209 at 277 (1968 ed. & Supp.) (courts prefer "to let an alteration of the law of torts so revolutionary in scope come from the legislative pen."). *Cf. Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 440 A.2d 810, 815–16 (1981) (distinguishing between common law and statutory remedies in area of innocent misrepresentation). We have found no case which adopts the standards proposed by plaintiffs, and the most recent cases on the issue do not augur a trend away from the *Ultramares* holding, except perhaps in the area of accountants' liability. *See, e.g., First Am. Title Ins. Co. v. First Title Service Co.,* 457 So.2d 467 (Fla.1984), reported in 53 U.S.L.W. 2044 (July 24, 1984) (refusing to approve "open-ended kind of abstracter's liability" based on duty of care to any and all persons who might foreseeably use and rely on the abstract); *H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 461 A.2d 138, 153 (1983) (stockholders who purchased stock after negligent audit not necessarily protected by court's extension of *Ultramares*). In light of relevant case law and authority and the extreme reach of the rule of law urged by plaintiffs, we hold that Count III does not state a claim under Connecticut law.

For the foregoing reasons, we dismiss Count III of plaintiffs' complaint. In reaching our decision, we express no view on the liability of directors or officers to *existing* shareholders, *see e.g., Williams v. Riddlesperger,* 217 Ala. 62, 114 So. 796 (1927) (in fraud case, distinguishing between liability to existing shareholders and to prospective shareholders) or to a class more limited than that described in Count III.

### The Derivative Claim

The individual defendants have asserted that the derivative claim alleged in Count IV "stands or falls with the class claims on which it is based." Reply Memorandum of the Individual Defendants, p. 1. Because we have determined that the class claims satisfy Rule 9(b), we deny all aspects of the individual defendants' motion to dismiss Count IV predicated on the alleged insufficiency of fraud allegations, including defendants' application to dismiss plaintiff Stein's request for indemnification. While plaintiff may have failed to express clearly his theory for recovery of costs, defendants' brief discussion of the issue does not adequately set forth their basis for objection. *See* Reply Memorandum, pp. 13–14. In any event, we find no occasion to dismiss a claim for costs at this stage in the litigation.

■ The remainder of the individual defendants' motion to dismiss Count IV requires us again to examine state law. The parties agree that the law of Connecticut, the state of incorporation, governs the disposition of the derivative action. The individual defendants argue that under Connecticut law a derivative claim based on "insider trading" by the individual defendants would not be recognized.

There is a clear split of authority on this question. New York and Delaware both recognize such a cause of action, *see Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969); *Brophy v. Cities Service Co.,* 31 Del.Ch. 241, 70 A.2d 5 (1949). Florida and arguably Indiana do not, *see Freeman v. Decio,* 584 F.2d 186 (7th Cir.1978) (interpreting Indiana law); *Schein v. Chasen,* 478 F.2d 817 (2d Cir.1973), *vacated sub nom. Lehman Bros. v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), *on certification after remand,* 313 So.2d 739 (Fla.S.Ct. 1975), *aff'g district court after disposition*

of certified question, 519 F.2d 453 (2d Cir. 1975).

The parties have brought to our attention the sound policy arguments behind their respective positions, and, as a matter of public policy alone, the decision to follow one line of authority over the other is a close question. *See Freeman, supra,* 584 F.2d at 196.

Our task is less difficult, however, because we believe Connecticut's highest court has indicated its intention to follow the New York and Delaware line of cases. In *Katz Corp. v. T.H. Canty & Co.,* 168 Conn. 201, 362 A.2d 975 (1975), a minority shareholder and disappointed takeover bidder brought a derivative suit alleging theft of corporate opportunity and insider trading on the part of officers and directors of T.H. Canty & Co. In affirming the trial court verdict for defendant-insiders on both issues, the Connecticut Supreme Court stated, "It has been recognized that inside trading by a corporate fiduciary may be a violation of the common-law duty which he owes to his corporation." 362 A.2d at 980. As support for this proposition, the court cited *Brophy, Diamond,* and the first Second Circuit opinion in *Schein.* By making the above statement and then reaching the merits of the derivative claim, we believe the Court affirmatively indicated its intention to follow the *Brophy-Diamond* line of cases. Any uncertainty on this issue was removed by *Ferris v. Polycast Technology Corp.,* 180 Conn. 199, 429 A.2d 850 (1980), where the Connecticut Supreme Court, addressing a counterclaim based on insider trading, stated, "We have recognized, in *Katz Corporation v. T.H. Canty & Co.,* 168 Conn. 201, 210–11, 362 A.2d 975, 980 (1975), that 'inside trading by a corporate fiduciary may be a violation of the common-law duty which he owes to his corporation.' That principle is not at issue." As in *Katz,* the *Ferris* Court affirmed a judgment for the alleged insider entered after a trial in the lower court because of a failure of proof on the insider trading claim. In its reference to *Katz,* we do not believe

that the *Ferris* court merely assumed for the purposes of the appeal that the cause of action would lie, but rather stated what the law of Connecticut, in fact, was and that such law was not open to dispute.

Though defendants dismiss the *Katz* and *Ferris* holdings as dicta, they have pointed to no countervailing dicta or substantive holding in support of their position on Connecticut law.[5] In addition, defendants have not demonstrated that *Diamond* and *Brophy* are of such antiquated vintage and lacking in enlightened support as to compel the conclusion that the Connecticut courts, if faced squarely with the issue before us, would decline to follow *Diamond* and *Brophy.* Indeed, *Katz* and *Ferris* strongly suggest the opposite conclusion.

Therefore, keeping in mind our duty "to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear," *West v. Am. Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), we hold that Count IV states a claim under Connecticut law.

 Defendants have also requested, alternatively in the event we deny their motion to dismiss Count IV, that alleged "indispensable parties" be compelled to join this action under F.R.Civ.P. 19. We decline to do this. The pertinent provision of Rule 19 speaks of a *substantial* risk of multiple liability. We do not believe defendants currently face a substantial risk of multiple liability. Defendants have not pointed to other lawsuits filed by contemporaneous traders. Should such suits be filed during the pendency of this litigation, defendants may avail themselves of various procedural devices to protect against multiple liability including a renewed application under Rule 19. Moreover, should liability be found here, defendants may propose a suitable plan of equitable and protective relief to the Court, *e.g.,* setting a proportion of the recovery in escrow until relevant statutes of limitation expire.

*Yanow v. Teal Industries, Inc.,* 178 Conn. 262, 422 A.2d 311 (1979), though helpful in distinguishing derivative from direct lawsuits, is inapposite to the issue here.

For the foregoing reasons, we deny defendants' motion to dismiss Counts I and II and grant defendants' motion to dismiss Count III. The individual defendants' motion to dismiss Count IV is also denied, as is the request to join "indispensable parties."

SO ORDERED.