OPINION OF THE COURT
Cooke, J.
The issue posed is whether accountants retained by a limited partnership to perform auditing and tax return services may be held responsible to an identifiable group of limited partners for negligence in the execution of those professional services. We hold that, at least on the facts here, an accountant’s liability may be so imposed.
Plaintiff is a limited partner in Guarente-Harrington Associ *359 ates (Associates), a limited partnership formed in early 1968 for the stated purpose of serving "as a hedge fund through which the funds of its Partners may be utilized in investing and trading in marketable securities and rights and options relating thereto.” The general partners are defendants William E. Guarente and George F. Harrington. In September, 1968, Associates retained defendant Arthur Andersen & Co. (Andersen), a partnership engaged in the general practice of public accountancy, to perform an audit and prepare the tax return of Associates. Such an audit was required by the-partnership agreement.
Among the partnership agreement stipulations were provisions: that the initial capital contribution of each limited partner shall not be less than $250,000; that no partner may withdraw any part of his interest in the partnership, except at the end of any fiscal year upon giving written notice of such intention not less than 30 days prior to the end of such year; that the books and records of the partnership shall be audited as of the end of each fiscal year by a certified public accountant designated by the general partners; and that proper and complete books of account shall be kept and shall be open to inspection by any of the partners or his or her accredited representative.
The complaint purports to embrace five causes of action, four against the two general partners individually, and the fifth against Andersen, the accounting firm. It is this last cause, the gravamen of which is for professional malpractice, with which we are here concerned. It is alleged that there are approximately 40 limited partners. Plaintiff moved for leave to serve an amended and supplemental complaint and defendant Andersen moved for dismissal of the cause of action asserted against it pursuant to CPLR 3211 (subd [a], par 7) on the ground that the pleading fails to state a cause of action, or, alternatively, for a severance of said cause from those asserted against the general partners. The motions were consolidated for disposition and Special Term dismissed the complaint as to Andersen for failure to state a cause of action and directed that judgment be entered dismissing the complaint against Andersen on the merits, as well as ordering a severance of the cause against Andersen, denying the motion to dismiss the causes against the general partners and granting leave to plaintiff to serve an amended and supplemental complaint only on defendant general partners, individually. *360 Plaintiff appealed from so much of Special Term’s order as dismissed the complaint against Andersen for failure to state a cause of action and the Appellate Division affirmed.*
The cause of action directed against Andersen alleges, inter alia, that between September 1, 1969 and March 31, 1970 Andersen knew or should have known that Guarente and Harrington were engaging in withdrawal of funds from their capital accounts in violation of the partnership agreement, that on March 31, 1970 Andersen issued its auditor’s report with financial statements of Associates for the fiscal year ending October 31, 1969, and that Andersen violated its professional duties and was guilty of professional misconduct: in that it failed to notify all partners that Guarente and Harrington made withdrawals of funds without proper notice, that the general partners had neglected to prepare and distribute the annual schedule required by the partnership agreement, and that withdrawals were made between November 1, 1969 and March 20, 1970 but were calculated and reported as being retroactive as of October 31, 1969; and in that the audit reports and financial statements were inaccurate and misleading in failing to state that disbursements for various management expenses- other than salaries were made in violation of the partnership agreement and in carrying forward without critical comment misrepresentations as to the value of restricted sécurities held by Associates. From the evidentiary material submitted to Special Term by plaintiff (see Guggenheimer v Ginsburg, 43 NY2d 268 [decided herewith]), the thrust of plaintiff’s claim of malpractice against Andersen centers on the accounting firm’s alleged failure to comment on the withdrawal by the general partners of $2,000,000 of their $2,600,000 capital investment based on back-dated oral notices, avoiding six months of losses prior to actual withdrawal, and the lumping together of the $2,000,000 withdrawals with $49,144 in withdrawals by limited partners so that a reader of the financial statement would not be likely to realize that the two general partners had withdrawn a major portion of all their investments. Emphasis is also placed on the acceptance of the valuations of the general partners of restricted securities without adequate checking.
Citing Ultramares Corp. v Touche (255 NY 170) and con *361 tending that plaintiff does not stand in privity with it, defendant Andersen maintains that plaintiff lacks capacity to sue and may not recover for these alleged acts of negligence (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3211:13, pp 19-20). Ultramares, however, presented a noticeably different picture than that here, since there involved was an "indeterminate class of persons who, presently or in the future, might deal with the [debtor-promisee] in reliance on the audit” (p 183). There, it was stated at pages 180-181: "In the field of the law of contract there has been a gradual widening of the doctrine of Lawrence v. Fox (20 N. Y. 268), until today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy (Seaver v. Ransom, 224 N. Y. 233, 238). Even in that field, however, the remedy is narrower where the beneñciaries of the promise are indeterminate or general. Something more must then appear than an intention that the promise shall redound to the beneñt of the public or to that of a class of indefinite extension. The promise must be such as to 'bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost’ (Moch Co. v. Rensselaer Water Co., 247 N. Y. 160, 164; American Law Institute, Restatement of the Law of Contracts, § 145)” (emphasis added). Indeed, the import of Ultramares is its holding that an accountant need not respond in negligence to those in the extensive and indeterminable investing public-at-large.
Here, the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components (see Ultramares Corp. v Touche, 255 NY 170, 182-185, supra). The instant situation did not involve prospective limited partners, unknown at the time and who might be induced to join, but rather actual limited partners, fixed and determined. Here, accountant Andersen was retained to perform an audit and prepare the tax returns of Associates, known to be a limited partnership, and the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a *362 duty to audit and prepare carefully for the benefit of those in the fixed, definable and contemplated group whose conduct was to be governed, since, given the contract and the relation, the duty is imposed by law and it is not necessary to state the duty in terms of contract or privity (cf. Glanzer v Shepard, 233 NY 236, 239; see, also, Scholen v Guaranty Trust Co. of N. Y., 288 NY 249, 253; 1 Harper and James, Torts, § 7.6, p . 546).
In Glanzer v Shepard, a judgment in favor of plaintiffs was upheld where defendants, public weighers engaged by the seller of beans, reported negligently the weight of a quantity of the commodity thus causing plaintiffs, the buyers, to overpay the sellers. Thus, there was involved a negligent misrepresentation which induced a third party to act to his disadvantage.
Judge Cardozo, who wrote both Glanzer and Ultramares, distinguished Glanzer in this fashion: "Here was something more than the rendition of a service in the expectation that the one who ordered the certificate would use it thereafter in the operations of his business as occasion might require. Here was a case where the transmission of the certificate to another was not merely one possibility among many, but the 'end and aim of the transaction,’ * * * The intimacy of the resulting nexus is attested by the fact that after stating the case in terms of legal duty, we went on to point out that viewing it as a phase or extension of Lawrence v. Fox * * *, or Seaver v. Ransom * * *, we could reach the same result by stating it in terms of contract”. (Ultramares, supra, at p 182.) Here, too, the furnishing of the audit and tax return information, necessarily by virtue of the relation, was one of the ends and aims of the transaction.
In Hochfelder v Ernst & Ernst (503 F2d 1100, 1107, revd on other grounds 425 US 185), the court, in discussing recent inroads on the reach of Ultramares, stated: "The courts in diminishing the impact of Ultramares have not only embraced the rule of Glanzer—liability to a foreseen plaintiff—but have extended an accountant’s liability for negligence to those who, although not themselves foreseen, are members of a limited class whose reliance on the financial statements is specifically foreseen.” Here, plaintiff was a member of a limited class whose reliance on the audit and returns was, or at least should have been, specifically foreseen.
As to duty imposed, generally a negligent statement may *363 be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage (Nichols v Clark, MacMullen & Riley, 261 NY 118, 125), but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all (Courteen Seed Co. v Hong Kong & Shanghai Banking Corp., 245 NY 377, 381). Indeed, the rule thus enunciated was specifically approved in Ultramares (supra, at p 185; see, also, International Prods. Co. v Erie R. R. Co., 244 NY 331, 337-338; Everson v First Trust & Deposit Co., 46 AD2d 722; Dorsey Prods. Corp. v United States Rubber Co., 21 AD2d 866, affd 16 NY2d 925).
Defendant Andersen’s contention, that plaintiff falls beyond the bounds of protected parties, rests primarily on the theory that its contract with the limited partnership circumscribed the extent of its obligation and the outer limits of its care. This reasoning fails to recognize that "[t]he duty of reasonable care in the performance of a contract is not always owed solely to the person with whom the contract is made * * * It may inure to the benefit of others” (cf. Rosenbaum v Branster Realty Corp., 276 App Div 167, 168; see, also, Wroblewski v Otis Elevator Co., 9 AD2d 294, 296). While Ultra-mares made it clear that accountants were not to be liable in negligence on the generalized basis that a contract for professional services creates liability in favor of the general populace, this plaintiff seeks redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement.
Accordingly, the order of the Appellate Division should be reversed and the motion to dismiss the complaint as against defendant Arthur Andersen & Co. denied, with costs to abide the event.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

 The order of affirmance of the Appellate Division recites that the appeal was taken from so much of the order as grants the motion of Andersen to dismiss the complaint as against it "and from the judgment entered thereon.”