Howard SIROTA, et al., Plaintiffs,

v.

SOLITRON DEVICES, INC., et al., Defendants.

No. 75 Civ. 1369 (CLB).

United States District Court, S.D. New York.

May 12, 1983.

I. Stephen Rabin, Rabin & Silverman, Stephen Oestreich, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs.

Jerome Londin, and Andrew N. Grass, Jr., of Carro, Spanbock, Londin, Fass & Geller, New York City, for defendant Solitron Devices, Inc.

John M. Burns, of Burns & Fox, Robert Meshel, of D'Amato & Lynch, New York City, for defendant/third party complainant Louis Sternbach & Co.

Daniel Pollack, Martin I. Kaminsky, and Edward T. McDermott, of Pollack & Kaminsky, New York City, for third party defendant American Home Assur. Co.

Patrick Lyons, Lester, Schwab, Kate & Dwyer, New York City, for third party defendant Midland Ins. Co.

Mark Bunim, Pincus, Orenstein, Bizar, Dalessandro & Solomon, New York City, for third party defendant Etna Ins. Co.

Ignatius John Melito, of Siff & Newman, New York City, for third party defendant The Home Indem. Co.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Although it is probably too much to ask of the reader, we assume familiarity with all prior judicial proceedings in this ancient consolidated securities class action. Particularly, familiarity is assumed with the decision of the Court of Appeals reported at 673 F.2d 566 (2d Cir.1982).

As was noted in that opinion, this securities class action was tried to a jury on the theory that Solitron Devices, Inc. ("Solitron") and some of its officers, aided and abetted by the accounting firm of Louis Sternbach & Co. ("Sternbach"), intentionally issued annual reports and financial statements containing materially false misrepresentations of the company's sales, income and inventories, all in violation of familiar Rule 10b–5.

The plaintiff class, purchasers of Solitron shares on the public market, received a general verdict and favorable answers to special interrogatories from our trial jury. The jury also found that Sternbach had actual knowledge (scienter) of the misrepresentations by Solitron and aided and abetted the scheme. The trial jury also found that Sternbach had been negligent in its auditing procedures in failing to discover the false bookkeeping entries which Solitron had made in its own financial records.

This Court granted judgment n.o.v. in favor of Sternbach on the issue of scienter with respect to so much of the action as was founded on Rule 10b–5. This Court also dismissed the pendent state law claim based on negligence, after verdict, on the theory that the negligence, if there were any, was not actionable under New York law at the instance of the plaintiff class. This Court also concluded (Memorandum decision of March 6, 1981, p. 37) that it would have ruled otherwise than the jury on the issue of negligence had it been acting as trier of the fact, and held with respect to Sternbach's actions:

"While it is always hoped that certified public accountants, in connection with their audits, will detect mistakes, frauds, embezzlements or other forms of crookedness in the company, as this Court has previously observed 'no sheriff can prevent all felonies in his bailiwick, and the law does not so require. *Rich v. New York Stock Exchange*, 379 F.Supp. 1122, 1126 (S.D.N.Y.1974), *rev'd. on other grounds*, 522 F.2d 153 (2d Cir.1975).'
Some evidence of failure to follow standard auditing practices was introduced to the jury. Whether the accountants acted negligently was a question of fact upon which reasonable persons could differ. It was within the jury's function to determine these facts. There was not such a

failure of proof as to require a judgment notwithstanding the verdict or a new trial on this point." *Id.*, at 37–38.

This Court concluded however that the New York law of accountant's professional malpractice does not impose liability on accountants in favor of unrelated third parties, such as the members of this plaintiff class. See generally, *White v. Guarente,* 43 N.Y.2d 356, 361, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977). This conclusion remained undisturbed on appeal. The Court of Appeals, however, held with respect to Sternbach:

"The [district] court granted judgment to Sternbach notwithstanding the verdict on the count of aiding and abetting Solitron's 10b–5 violation, finding 'no evidence from which a reasonable juror acting reasonably could conclude that Sternbach aided and abetted the primary securities law violation with the requisite scienter.' The court, interpreting the requisite scienter to be actual knowledge of the fraud since Sternbach did not owe a fiduciary duty to the plaintiff investors, found that the evidence at most showed that Sternbach was negligent. The proof did not show, the court wrote, that Sternbach's partner Edward Cole knew that the Best & Raynor, JFD Electronics and AEL Israel transactions were consignments, even though 'no confirmations were received by Sternbach when requested, no payments were made, no purchase orders were produced and shipments were made close to the end of the fiscal year,' and even though a letter from AEL Israel to Cole said the transaction was a consignment. The court found also that even if, as plaintiffs sought to prove, Sternbach performed inadequate and erroneous audits, this did not constitute knowing assistance in the fraudulent overstatement of inventory.

Recalling the stringent standard for granting judgment notwithstanding the verdict, we disagree with the court's conclusion that no reasonable juror could have reached a verdict against Sternbach. First, the court's conclusion that Sternbach lacked actual knowledge is inconsistent with the jury's finding, upheld by the court on defendants' post-trial motion, that Trager—who was employed by Sternbach in 1967, 1968, and early 1969—had actual knowledge of the fraud. Second, evaluation of Cole's credibility, in the face of evidence suggesting he was on notice that the transactions he certified as sales were consignments, was for the jury, not the court. And in light of Sternbach's claims to have performed various costing procedures and tests on Solitron's 1967–70 inventory, the jury might well have concluded that Sternbach knew that its certification of reports overstating inventory was fraudulent. The combination of these facts leads us to the conclusion that there was sufficient evidence for the jury to infer that Sternbach had actual knowledge of fraud in violation of Rule 10b–5." 673 F.2d at 575–76.

Besides reinstating the verdict against Sternbach as a joint tortfeasor along with Solitron and the individual defendants, under Rule 10b–5, the Court of Appeals remanded for recomputation (apparently by the Court without a jury) of the class damages for 1970. See p. 577 of 673 F.2d. The Court of Appeals also held that Sternbach was entitled to contribution from the Solitron defendants.

Since that decision was uttered by the Court of Appeals and the petition for certiorari was denied (—— U.S. ——, 103 S.Ct. 213, 74 L.Ed.2d 170), there have been further hearings on remand in the district court, and submissions of further memoranda and arguments concerning the issues of contribution, and the recomputation of the damages for the year 1970 suffered by the class members as a result of the false financials issued by Solitron for that year.

This case, pending since March 20, 1975 and now almost a litigation career in itself for those involved, recently experienced a sudden denouement. On January 24, 1983 Sternbach's professional malpractice insurers, for the first time, disclaimed coverage with respect to the portion of the damages

which the class plaintiffs will ultimately recover from the accountants.

Sternbach, by its own attorneys, naturally surprised by this turn of events, seeks leave, by order to show cause issued February 25, 1983, and fully submitted for decision on April 3, 1983, to serve and file a third-party complaint against the insurers pursuant to Rule 14(a), F.R.Civ.P. The insurers oppose the motion most vigorously.

The insurance coverage, on a standard printed contract of adhesion issued in New York, extends to the following:

"I. *Accountants' Professional Liability*: To pay on behalf of the insured, all sums which the insured shall become legally obligated to pay for damages, other than damages for bodily injury to, or sickness, disease or death of any persons or for injury to or destruction of any tangible property, as the result of any claim or claims caused or alleged to have been caused by the insured, any accountant or accounting organization acting under contract with the insured or any partner or employee of any of the foregoing, in the performance of professional services for others in the insured's professional capacity as an accountant, including but not limited to breach of contract not committed by the insured with affirmative intent:

(a) through neglect, error or omission;
(b) through dishonesty, misrepresentation or *fraud, except if made or committed by or at the direction of the insured, any officer or partner of the insured with affirmative dishonesty or actual intent to deceive or defraud*;
(c) [omitted]." (Emphasis added) See Ex. A annexed to proposed third-party complaint.

We wish to avoid the temptation to engage in oversimplification: apparently the insurers have suddenly and recently concluded that by reason of the Court of Appeals' reinstatement, some eleven months earlier, of that part of the jury verdict finding scienter, and therefore aider and abettor liability on the part of Sternbach, that Sternbach's violation of Rule 10b–5 in this case constituted "fraud." The insurers assert that "fraud" is "fraud," and that the use of the term "fraud with affirmative dishonesty or actual intent to deceive or defraud," as used in the exclusionary clauses in the typical professional malpractice (negligence) liability policy, that is "real fraud," is such as to mean that a jury verdict finding an accountant who certified a false financial report of a client in violation of Rule 10b–5 gives rise to an excluded peril under the insurance policy.

While many purchasers of professional malpractice insurance would probably be startled to hear this unusual argument for the first time, it presents fair ground for litigation. The question remains, nevertheless, a question of state law. It is the substantive caselaw of the State of New York which will determine whether "Rule 10b–5 fraud" is "real fraud" for purposes of this "fraud" exclusion, or merely some attenuated form of mopery which is not real fraud.

While this Court is capable of deciding such an issue of New York State law in a case within our ancillary, pendent or diversity jurisdiction, we are no better situated to decide it than a state court is, and our resolution may not be quite so authoritative as that which a New York court can impart.

Other issues are tendered by the proposed third-party complaint. From the inception of this litigation, Sternbach was defended by American Home Assurance Company ("Home"), acting for itself and for other insurers, some five in number, who had apparently issued insurance coverage to Sternbach. It is apparently undisputed that the insurers imposed defense counsel of their choice upon the Sternbach firm some eight years ago, excluded Sternbach from settlement discussions, and in the management of the defense before and since the verdict of the jury, and before and after the last appeal, created an impression with this Court and the other parties that they were negotiating in good faith to participate in a possible settlement which would have the effect of putting an end to the continued expense and burdens of this

lawsuit of *Jarndyce* proportions, and obviating further appeals.

Thus, if the issue of scope of coverage is resolved in favor of the insurers, it must then be determined whether laches, waiver, or any other conduct on the part of the insurers estops them from disclaiming at this (hopefully) late stage of this mammoth underlying lawsuit.

As a matter of discretion this Court concludes that it should decline to exercise jurisdiction over the dispute between Sternbach and its insurers for the reasons set forth below.

█ Rule 14, F.R.Civ.P. was designed to eliminate multiple and repetitive lawsuits and trials by allowing for a single presentation of evidence when multiple claims turn upon identical or similar proof. *Dery v. Wyer,* 265 F.2d 804 (2d Cir.1959); *Gardner v. United States,* 36 F.R.D. 453 (S.D.N.Y. 1964). To further these purposes, this Court may exercise its discretion to permit a defendant to join a claim against a third-party arising out of the same transaction as does the original action. *Rosario v. Amalgamated Ladies Garment, etc.,* 605 F.2d 1228 (2d Cir.1979); *E.F. Hutton v. Jupiter Development Corp., Ltd.,* 91 F.R.D. 110 (S.D.N.Y.1981).

█ Under the circumstances of this case it is clear that the purposes of Rule 14 would not be served by joinder of Sternbach's additional claim at this time.

At this late stage of this litigation, as noted before all that remains to be done is to adjudicate the claims of contribution, remeasure and adjudicate the damages of the plaintiff class for 1970, and repackage the matter in the form of supplemental findings and conclusions for inevitable further consideration by the Court of Appeals. Those unresolved issues involve questions of damages and relative culpability for purposes of contribution, rather than liability. Thus joinder of the ancillary third-party claims sought to be pleaded against the insurers would be a joinder in name only, since these issues would, immediately after such joinder, have to be severed for separate trial, after further pre-trial discovery bearing on waiver, laches and estoppel.

The evidence required to resolve the issues in the third-party claim would be largely unrelated to that developed in the trial of the main case. While it is true that this Court has reasonable familiarity with the facts underlying the securities claim, those facts are related only tangentially to the essential question of the extent of Sternbach's insurance coverage. Moreover, those facts also appear fully from the prior written opinions of this Court, from the trial record, and the opinion of the Court of Appeals. A state court is equally capable of reading and understanding them. We disclaim any special expertise, based upon our prior familiarity with the case or otherwise, which would allow us to determine more readily than can a state judge, whether, under New York substantive law, Sternbach is or is not entitled to rely on its insurance coverage in this rather typical Rule 10b–5 case. Indeed the unusual situation presented by the insurers' rather novel interpretation of what this Court thought was standard insurance coverage under state law indicates that we might well exercise *Pullman*-type abstention and decline to undertake the resolution of the proposed third-party complaint even if the litigation were not now so far advanced towards its conclusion.

We are sanguine that the state courts of New York will be able and willing to provide for Sternbach the full measure of whatever relief it is entitled to under New York law. While calendar congestion in the downstate counties may be more severe than that found in this district court and jury selection is more ponderous, the state courts when compared with courts of the Second Circuit, excel by far in their ability by use of summary judgment motions to construe an insurance policy against a background of record facts, and to rule upon laches, waiver and estoppel. *Cf., Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir.1975); *Egelston v. State University College at Genesco,* 535 F.2d 752 (2d Cir.1976).

All relevant circumstances suggest that defendant Sternbach's aforesaid motion by Order to Show Cause issued February 25, 1983 should be, and it is, denied.

So Ordered.