OPINION of the court
Carolyn E. Demarest, J.
This suit was commenced by American Express Company to recover an unpaid balance upon the account of defendant. Defendant has, in turn, brought in the third-party defendant, United Airlines, based upon his contention that United is liable to him for the charges plaintiff seeks to collect by reason of the negligent misrepresentation of its agent in inducing him to accept its tickets and make his trip.
Defendant Teitel and United Airlines have stipulated that the plaintiff, American Express, has established a prima facie case against Teitel. It was further agreed that, in the event third-party plaintiff Teitel is successful against United, United. will indemnify Teitel for the $1,345.70 he owes American Express.
*823 The facts giving rise to Mr. Teitel’s claims were not disputed at trial. On or about March 27, 1981, Mr. Teitel telephoned United Airlines and spoke to a ticket agent who identified herself as United’s representative. He told her that he wanted to travel with his wife and nine-year-old son to Las Vegas on April 22 and to return on April 26. He told the agent that he must get back to New York on the 26th. The agent informed Teitel that the super-saver fare would be available for a flight on April 22, but that he could not be scheduled for a return flight on the 26th at that time. The agent stated that she would schedule his return for the 27th, but she represented that he would have no trouble getting a flight back to New York on the 26th because a large number of people canceled out. United’s witness explained that it is the practice of the airline to overbook in the expectation that some of the passengers will not appear on the particular date.
Mr. Teitel testified that United’s ticket agent did not inform him of the risk of penalty if he did not alter the confirmed reservation at least 14 days before the scheduled date. Indeed, the agent did not even hint that the tickets issued for the flight of April 27 would not be equally valid on April 26.
United’s witness, a Mr. Bang, testified that the computer listing of Mr. Teitel’s reservation, which indicated that the tickets were written on March 27, 1981, would also reveal the name of the United agent who spoke to Mr. Teitel. However, while Mr. Bang noted that the Teitels had been wait-listed for the flight they desired on April 26, thus confirming Mr. Teitel’s testimony that he had requested this date, he did not know the name of the agent nor was she produced at trial. Thus, Mr. Teitel’s reliance upon the agent’s representation that his tickets for the April 27 flight could be used on April 26 is factually uncontroverted. Mr. Teitel stated that he would not have made the trip had he known that a change in date of return would result in an additional charge of $1,100. In reliance upon United’s agent’s advice, Mr. Teitel purchased two adult round trips at $298 each and a child’s round trip for $98, totaling $694.
*824 In Nevada, Mr. Teitel called United on April 25. He explained his situation, but was told that he was “in limbo”. On the 26th, he went to the airport with his family expecting to return to New York on the super-saver tickets. He told United that he must have confirmed reservations notwithstanding the date of the 27th on the tickets. Nevertheless, the Nevada agent tore up his tickets and charged him an additional $1,100 to fly him and his family to New York. This sum was charged to Mr. Teitel’s American Express card.
Third-party defendant United contends that Mr. Teitel may not succeed against it based upon its tariff rule 781(c), which requires that reservations for the fares specified therein, “Round-Trip Advance Purchase Excursion Fares”, be made at least 7 to 14 days prior to the flight. Applying this rule to the instant case, United’s witness testified that Mr. Teitel would have had to have confirmed his return flight for April 26 no later than April 12,1983. No mention of this date was made by United’s agent at the time of booking even though the reservation included a wait-listing for the 26th. Mr. Bang, United’s only witness, explained that only a specified number of seats are allocated for super-saver passengers on a particular flight and, although the plane may fly with empty seats, no super-saver ticket will be issued for those seats in excess of the designated number. In fact, Mr. Bang further testified that the computer automatically cancels availability for all remaining super-saver seats 14 days in advance so that Mr. Teitel’s request for a super-saver return flight on April 26 could not have been honored after April 12. Mr. Teitel’s understanding that he could arrange for his return flight on the 26th by contacting United in Las Vegas was an impossibility that the agent should have known and conveyed to him at the time she accepted his reservation.
It is not disputed that the agent who took Mr. Teitel’s reservation was employed and controlled by United and that the transaction, that is the conveying of the information and the making of the reservation, was in furtherance of her employer’s business. The third-party defendant must, therefore, respond in damages for her negligence in misstating the relevant information and inducing Mr. Tei *825 tel’s reliance thereon. (See Lundberg v State of New York, 25 NY2d 467.)
United’s contention, that the orange-colored sticker appended to the tickets, which reads: “important notice. This is a ‘special fare’ ticket travel may be restricted to certain days and hours. When booking or changing your reservations, please advise the Reservations Agent of the special fare so that he can assist you in complying with any restrictions. Failure to do so may result in an increase in the fare shown on this ticket. Thank you.”, limits its responsibility, is without merit in light of the fact that the agent who made the mistake herself issued the tickets with imputed knowledge of any and all applicable limitations. Moreover, the notice only indicates the possibility of restriction and does not specify what limitations do exist. The passenger was, therefore, entitled to rely upon the advice of United’s agent as authority superior to this enigmatic caption.
Nor does the small print on the inside of the ticket stating that the carrier’s tariffs are incorporated by reference into the contract of carriage, “and are available on application at the offices of carrier”, relieve the third-party defendant of liability for negligence. Mr. Teitel, who is engaged in the wholesale grocery business, is fairly described as the proverbial “ordinary man” with no particular legal skills or knowledge of the airline industry. (Contrast Nader v Allegheny Airlines, 626 F2d 1031,1037-1038, further distinguished from the case at bar by the claim for fraudulent misrepresentation which requires actual knowledge of falsity and an intent to deceive [supra, at p 1036], rather than merely negligence in providing erroneous information, as here.) Mr. Bang acknowledged that a passenger would not be able to determine from the face of the tickets exactly what restrictions were applicable to the flight or even what tariff applied. Furthermore, though an experienced customer service agent familiar with ticket selling procedures who had even instructed other agents about tariffs, Mr. Bang testified that he did not know, and could not tell from the tickets, the precise terms of the applicable tariff. A review of tariff rule 781(c), supplied by the third-party defendant’s counsel, persuades this court *826 that charging the general public with actual knowledge of the terms of tariffs not readily available and generally incomprehensible would be contrary to reason and public policy. (See Owens v Italia Societa Per Azione Navigazione-Genoua, 70 Misc 2d 719, 724-726, affd 75 Misc 2d 104 [App Term, 1st Dept, 1973].) “Generally, a purchaser of a transportation ticket has a right to rely upon the statements and assurances of a ticket agent as to the sufficiency of the ticket furnished him as evidence of his rights as a passenger. It is a ticket agent’s duty, and therefore within the scope of his authority, to give passengers correct information with regard to their tickets and to provide them, upon payment of the fare, with proper tickets. The traveling public are not presumed to know the specific rules and regulations concerning the conduct of the carrier’s ticket agents, nor are they held to knowledge of the precise limitations placed upon the authority of such employees.” (14 Am Jur 2d, Carriers, § 795, p 262.)
Finally, conclusive of the third-party defendant’s claim that it is protected from liability by the terms of its tariff, is the decision of the United States Supreme Court in Nader v Allegheny Airlines (426 US 290). In Nader, a case involving the practice of overbooking and “bumping” passengers not disclosed at the time the ticket was purchased, the court permitted a common-law State claim for fraudulent misrepresentation to proceed, finding the provisions of the Federal Aviation Act (US Code, tit 49, § 1301 et seq.) to be supplemental to, and not inhibitive of, common-law remedies for private parties (426 US, at p 301). The court specifically recognized that the statute itself provides (US Code, tit 49, § 1506): “ ‘[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies’ ” (426 US, at p 298). (See, also, 426 US, at p 299, n 9.)
Distinguishing Texas & Pacific Ry. v Abilene Cotton Oil Co. (204 US 426), in which maintenance of a common-law action challenging the reasonableness of shipping rates charged pursuant to filed tariffs approved by the Interstate Commerce Commission was found to be inherently inconsistent with the very purposes of the act in seeking to *827 establish and enforce uniform rates so as to eliminate discrimination, the Nader court (supra), was “not faced with an irreconcilable conflict between the statutory scheme and the persistence of common-law remedies” (426 US, at p 299). Finding the statute not “absolutely inconsistent” with the common-law action, the court found that the two remedies may coexist, as contemplated in the statute.* Similarly, the case at bar does not involve any attempt to discriminate in violation of United’s tariff and there is no inherent inconsistency threatened by permitting common-law redress for the tort of simple negligence.
Upon the facts of this case, it cannot be seriously disputed that United’s agent had a duty to impart accurate information to Mr. Teitel. She certainly must have understood that part of her function in writing tickets based upon telephone orders was’ to advise prospective passengers of the information upon which they would necessarily rely in making their travel plans. Moreover, if knowledge of the highly technical terms of tariffs is to be imputed to the public, as United suggests, surely such knowledge is at least equally chargeable against the airline’s own agents and an erroneous statement that the passenger could obtain passage on a date other than that specified on the tickets, without any caveat as to limitations or conditions, constitutes negligent misrepresentation. (See White v Guarente, 43 NY2d 356.)
Accordingly, the third-party plaintiff Teitel shall have judgment over against the third-party defendant United Airlines for negligent misrepresentation in the sum of $1,345.70, with interest from August 3, 1982, which shall be applied in satisfaction of the judgment to be entered in that amount in favor of plaintiff American Express Company against defendant Teitel, also with interest from *828 August 3, 1982. United’s counterclaim for $411.50, representing the difference between the amount already charged the Teitels and the full amount of the regular round-trip fare alleged to be due the airline, is denied.

 Indeed, one of the “Causes of Complaint Against the Railroad System”, a list of public grievances used by the Callom Committee in formulating and drafting the Interstate Commerce Act of 1887 (which contained both the antidiscrimination provision contained in subdivision [b] of section 1373 of title 49 of the United States Code and the saving clause contained in section 1506 of title 49 of the United States Code) stated: “That railroads often refuse to recognize or be responsible for the acts of dishonest agents acting under their authority” (99 Cong Rec 864 [1887]). The origin of the language in the Federal Aviation Act of 1958 with respect to these two provisions is apparent. To construe these provisions, as United now proposes, so as to insulate the carrier from liability for the “dishonest” advice of its agent, whether deliberately or merely negligently given, would directly contravene the intent and purpose of the legislation.