Irving WIDETT, Co-Assignee for the Benefit of Creditors of B.W. Construction Co., Inc., Plaintiff-Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Reimann-Buechner Partnership, and County of Monroe, New York, Defendants-Appellees.

No. 595, Docket 86–7776.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1986.

Decided April 9, 1987.

Paul M. Lane, Boston, Mass. (Widett, Glazier & McCarthy, Boston, Mass., of counsel), for plaintiff-appellant.

Dennis R. McCoy, Rochester, N.Y., (Saperston & Day, Rochester, N.Y., of counsel), for defendant-appellee Reimann-Buechner Partnership.

Before MESKILL, KEARSE and MAHONEY,* Circuit Judges.

MESKILL, Circuit Judge:

Irving Widett, co-assignee for the benefit of creditors of B.W. Construction Co., Inc. (B.W.), appeals from a judgment following an order of the United States District Court for the Western District of New York, Telesca, J., granting summary judgment to defendant-appellee Reimann-Buechner Partnership (R–B) and dismissing Count III of the complaint, which pertains to its claims against R–B. B.W., a subcontractor, alleged that R–B, a landscape architectural firm employed by the County of Monroe (County), negligently prepared site plans on which B.W. relied, causing B.W. to sustain losses in the amount of $105,000. Judge Telesca held that New York law does not permit a negligence action against an architect absent a contractual relationship or a relationship approaching that of privity. We affirm.

BACKGROUND

This controversy arises out of the construction of Greece Canal Park, which is located in the town of Greece, New York, and is administered by the County. On November 5, 1981, the County entered into a contract with R–B for the preparation of plans and specifications to be used in the construction of Greece Canal Park. The contract also provided that R–B was to conduct casual inspections of the construction site to ensure compliance with its plans. The County retained primary responsibility for supervision of the work, providing a full time Clerk of the Works to manage the project site. R–B completed its first set of plans on June 23, 1982, based on topographical information supplied by the County.

* In accordance with the Rules of this Court, Judge Mahoney was assigned to the panel to replace Judge Mansfield who died on January 7, 1987.

On October 19, 1982, the County entered into a general construction contract with R.W. Scaccia & Sons Contractors, Inc. (Scaccia) who in turn signed a subcontract with B.W. to perform grading work required by the site plans. The subcontract provided that no additional work was to be performed except under written order from Scaccia. The subcontract also provided that all "fill" material was available on site and that no additional material for grading would be necessary to complete the project.

B.W. immediately surveyed the project site and discovered that elevations appearing on R–B's site plans were one to one and one-half feet higher than the elevations obtained from its own survey. After B.W. indicated to Scaccia and the County that additional fill would be required to correct the error, the County requested R–B to revise the grading plans. R–B complied with this request and developed a new set of plans. As work progressed, however, it became evident that the necessary fill could not be obtained from the "cuts" specified in R–B's revised plans. At this point, B.W. requested a work change order permitting B.W. to transport additional fill to the job site at the County's expense. Both Scaccia and the County refused to grant the order, warning B.W. that it would be ordered off the job unless it complied with the subcontract. B.W. chose to continue work under protest and hauled additional fill at its own expense. B.W. left the site shortly after Scaccia's bankruptcy in December 1983.

This action was commenced in the district court by plaintiff, as the co-assignee for the creditors of B.W., against Scaccia, United States Fidelity & Guaranty Company (who provided performance bonds on behalf of Scaccia), the County and R–B, alleging that defendants were liable for the increased costs B.W. incurred in completing the project. Judge Telesca granted defendants' motions for summary judgment and dismissed the complaint. B.W. appeals from only the dismissal of Count III of the complaint, which pertains to its claims against R–B.

## DISCUSSION

In this diversity action, the substantive law of New York applies to a tort claim arising out of construction work performed in New York state. *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842 (2d Cir.1984). B.W. alleges that R–B is liable in negligence for preparing erroneous site plans on which B.W. relied to its detriment. It is well settled in New York, however, that professionals are not liable either in tort or contract absent privity. *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). It is equally clear that no contractual relationship existed between B.W. and R–B in this case. B.W. argues, however, that the New York Court of Appeals in *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977), relaxed the *Ultramares* requirement of privity to a sufficient degree to permit its present suit against R–B. We do not agree.

In *White*, the Court of Appeals permitted a group of limited partners to bring an action individually against an accountant for the negligent preparation of financial statements. The limited partnership had retained the accountant to perform auditing and tax return services. Although a contractual relationship existed between the limited partnership and the accountant, no contract was formed between the limited partners individually and the accountant. Despite the absence of a direct contractual relationship, the *White* Court held that a sufficient nexus was established between the parties to permit an action by the individual limited partners against the accountant. According to the court, the contract between the limited partnership and the accountant rendered the beneficiaries both identifiable and fixed in number. "Here, the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit." *White*, 43 N.Y.2d at 361, 401 N.Y.S.2d at 477, 372 N.E.2d at 318.

Although New York has followed *White* with respect to the liability of accountants,

see, e.g., *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y. S.2d 435, 483 N.E.2d 110 (1985), we do not believe that the Court of Appeals is prepared to extend these rulings to the architectural profession. Since *White* was decided, the Court of Appeals has affirmed the dismissal of two subcontractor claims against architects. *See Alvord and Swift v. Stewart M. Muller Construction Co.*, unpublished (Sup.Ct. Sept. 9, 1976), *aff'd without opinion*, 56 A.D.2d 761, 391 N.Y. S.2d 1012 (1st Dep't 1977), *aff'd with opinion*, 46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238 (1978); *Underhill Construction Corp. v. New York Telephone Co.*, N.Y.L.J. Sept. 15, 1976, at 11, col. 1 (Sup. Ct.1976), *aff'd as modified*, 56 A.D.2d 760, 391 N.Y.S.2d 1000 (1st Dep't 1977), *aff'd without opinion*, 44 N.Y.2d 666, 405 N.Y. S.2d 40, 376 N.E.2d 201 (1978). In both cases, no direct contractual relationship existed between the subcontractor and the architect. The subcontractor contracted only with the general contractor; the architect contracted only with the owner. In neither case was a sufficient nexus found between the subcontractors and the architect that could serve as a substitute for contractual privity. The New York Supreme Court in *Alvord and Swift* stated that "[n]ot a single New York case is asserted for the proposition that the architect may be held directly liable to the subcontractor for a tortious breach of its duties, absent a direct contractual relationship, or a contract which spells out a third party beneficiary relationship." Reprinted in Br. of Appellee at A–3. In *Underhill*, the Supreme Court noted further that "[t]he subcontractor ordinarily is not considered to be a third-party beneficiary of the prime contract, unless otherwise indicated." N.Y. L.J. Sept. 15, 1976, at 11, col. 3.

More recently, in *James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 92 A.D.2d 991, 461 N.Y.S.2d 483 (3d Dep't 1983), *modified on other grounds*, 61 N.Y.2d 836, 473 N.Y.2d 960, 462 N.E.2d 137 (1984), the court dismissed a subcontractor's negligence claim against an architect, citing *Alvord and Swift*. In *Crow-Crimmins-Wolff & Munier v. Coun-*ty *of Westchester*, 90 A.D.2d 785, 455 N.Y. S.2d 390 (2d Dep't 1982), the Appellate Division stated in dictum that "without privity of contract, there is no duty owed to the subcontractor by the architect and the subcontractor is barred from bringing a direct suit for damages." *Id.* at 786, 455 N.Y.S.2d at 391.

The facts before us present no more compelling a case for the extension of *White* than those found in either *Alvord and Swift* or *Underhill*. Here, as in both *Alvord and Swift* and *Underhill*, no contractual relationship existed between the architect and the subcontractor. Only the County contracted with R–B and only the County requested R–B to prepare the original and revised site plans. The record discloses no direct communication between B.W. and R–B regarding problems on the job site. B.W. was certainly not the client of R–B and no other special circumstances exist to justify the application of *White* to this case.

Given the Court of Appeals' apparent unwillingness to expand the modified privity requirement in *White* to architects on the basis of facts similar to those presented in this case, we conclude that a New York court would not adopt the rule B.W. argues for here.

### CONCLUSION

The New York Court of Appeals has not relaxed the privity requirement for negligence actions against architects and appears unlikely to do so. Because privity of contract remains a requirement to establish negligence against an architect under New York law and because such privity is lacking here, plaintiff has failed to state a claim upon which relief can be granted. We, therefore, affirm the district court's dismissal of Count III of B.W.'s complaint.