**GUILDHALL INSURANCE COMPANY, LTD., a corporation of Great Britain, Plaintiff,**

v.

**James M. SILBERMAN, Defendant.**

**James M. SILBERMAN, Third–Party Plaintiff,**

v.

**William B. O'BOYLE and William B. O'Boyle Investments, Third–Party Defendants.**

**No. 83 Civ. 7367 (DNE).**

United States District Court, S.D. New York.

June 16, 1988.

Gennet & Kallman, Roseland, N.J., and Litman, Kaufman & Asche, New York City, for plaintiff Guildhall.

Killarney, Fabiani & Brody, New York City, for defendant Silberman.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendant has moved for summary judgment on the fraud and negligence causes of action asserted against him. The motion for summary judgment is denied.

## BACKGROUND

In January 1980, third party defendant William B. O'Boyle retained defendant James M. Silberman to appraise certain artifacts that O'Boyle had collected. Plaintiff Guildhall Insurance Company was not a party to that contract nor did it communicate with Silberman prior to the formation of that contract. On March 14, 1980, O'Boyle insured the collection with Guildhall through its managing agent, Chubb Custom Market, Inc. Guildhall insured the collection at the purchase price. On May 28, 1981, based on Silberman's appraisals, Guildhall amended the insurance policy. The value of the policy was raised to $4,054,800 for the entire collection.

In October 1981, a portion of the O'Boyle collection was stolen from his offices in New York City. Guildhall paid O'Boyle $1,811,000, the insured value of the stolen portion of the collection. In March, 1982, the stolen artifacts were recovered, and Guildhall offered to exchange the recovered artifacts for the money paid. O'Boyle refused that offer. Subsequently, Guildhall retained independent appraisers and received appraisals valuing the stolen artifacts at $200,000.

Asserting diversity jurisdiction, Guildhall brought the instant action for fraudulent and negligent misrepresentation against Silberman. Silberman subsequently impleaded O'Boyle as a third party defendant.[1]

Silberman has moved for summary judgment on both the fraud and negligence claims. Silberman raises several grounds for summary judgment. Among the grounds asserted is Guildhall's alleged failure to establish that it was in privity with Silberman, a requisite element of a cause of action for negligent misrepresentation in New York. *See Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). Whereas Guildhall has adequately addressed the issue of privity, summary judgment is denied on that ground. As there are material facts in dispute regarding the other grounds for summary judgment, the motion is denied.

## CHOICE OF LAW:

As an initial matter, this court must determine which state's law is applicable to the instant action. Guildhall claims that New Jersey law applies to this action. Such a choice of law would be favorable to the plaintiff in that New Jersey law, unlike New York law, does not require privity in actions for negligent misrepresentation. *See Rosenblum v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983). In determining which jurisdiction's law is in fact applicable, this court must apply the choice of law rules of New York. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

New York applies the law of the jurisdiction which "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised." *In re Am International, Inc. Securities Litigation*, 606 F.Supp. 600, 609 (S.D.N.Y.1985) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 482, 240 N.Y.S. 2d 743, 749, 191 N.E.2d 279, 283 (1963)). In negligence actions, relevant considerations include "the domicile of the parties, the

1. Guildhall and O'Boyle previously settled an    action for a sum of $300,000.

place where the tortious conduct occurred, and where the injury was suffered." *O'Rourke v. Eastern Airlines, Inc.*, 730 F.2d 842, 850 (2d Cir.1984) (quoting *Bing v. Halstead*, 495 F.Supp. 517, 520 (S.D.N.Y. 1980)). In light of these standards, it is apparent that New York law governs this action.

Almost all of Silberman's alleged tortious conduct occurred in New York. Silberman's appraisals were conducted in New York and Virginia. The appraisal contract between O'Boyle and Silberman was executed in New York. The appraisal was delivered to O'Boyle in New York, and by O'Boyle to Guildhall's managing agent at its New York office.

The only New York domiciliary in this action is third party defendant O'Boyle. Plaintiff Guildhall is a foreign corporation based in Great Britain, whose managing agent has its offices in Warren, New Jersey and in New York. Defendant Silberman is a Virginia resident. In such a case, New York law should apply as "New York has no policy or interest in applying foreign law against a foreign defendant in order to allow recovery for a plaintiff, where the plaintiff could not recover were defendant a New York resident." *In re Am International*, 606 F.Supp. at 609.

■ It is unclear where Guildhall's alleged injury occurred. O'Boyle's insurance policy based on Silberman's appraisals was issued from Chubb's New York office and delivered to O'Boyle in New York. Guildhall's only New Jersey contact is Chubb's New Jersey office and bank account, from which Guildhall paid O'Boyle. Nevertheless, even if Guildhall's alleged injury took place in New Jersey this contact is not a sufficient reason to apply to New Jersey law in this action.

New York's privity requirement for negligent misrepresentation is designed to protect New York accountants, and by analogy, appraisers,[2] against unlimited liability to unforeseen parties who rely to their detriment on negligently prepared financial statements. *See White v. Guarente*, 43 N.Y.2d 356, 363, 401 N.Y.S.2d 474, 479, 372 N.E.2d 315, 320 (1977); *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179–80, 174 N.E. 441, 445 (1931). Given the overwhelming majority of New York contacts and the fact that Guildhall is a foreign corporation, New York has "the greatest concern with the specific issues raised in this case." The court must therefore apply New York law and address the issue of whether plaintiff has adequately alleged privity.

NEW YORK'S PRIVITY REQUIREMENT:

■ Chief Judge Cardozo established the current privity requirement for negligent misrepresentation in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). In *Ultramares*, Cardozo reaffirmed the principle that "liability for negligence is bounded by the contract and is to be enforced between the parties by whom the contract has been made." *Id.* at 189, 174 N.E. at 448. However, the Chief Judge also recognized that "the assault on the citadel of privity is proceeding these days apace," *id.* at 180, 174 N.E. at 445, and relaxed the strict privity requirement in those cases where the relationship between plaintiff and defendant was "so close as to approach that of privity." *Id.* at 182–83, 174 N.E. 446.

The *Ultramares* opinion reconciled strict privity with an opinion Cardozo had written nine years earlier. In that case, *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), a bean merchant hired public weighers, who later submitted a false weight report to a buyer. In *Glanzer*, the Court noted the buyer's reliance on the weight report was "not merely one possibility among many, but the 'end and the aim of the transaction'" between the seller and

---

**2.** Courts have relied on the *Ultramares* privity requirement in non-accountant contexts. *See e.g. Chemical National Bank v. National Union Fire Insurance Company*, 74 A.D.2d 786, 425 N.Y.S.2d 818 (1st Dep't 1980) (appraiser of real property); *Gordon v. Holt*, 65 A.D.2d 344, 412 N.Y.S.2d 534 (4th Dep't 1979) (architect not held liable for allegedly negligently prepared report); *Goodman v. Title Guarantee Co.*, 11 A.D.2d 1003, 206 N.Y.S.2d 32 (1st Dep't 1960) (no privity between prospective seller of property and title company). The case at bar, concerning an appraiser of artifacts, is at least as analogous to *Ultramares* as are the cases listed above.

the public weighers. *Ultramares*, 255 N.Y. at 182, 174 N.E. at 445 (interpreting *Glanzer*). Accordingly, the Court held the weighers liable to the buyer "despite the absence of a contract between the parties because 'the plaintiff's intended reliance, on the information *directly transmitted* by the weighers, created a bond so closely approaching privity that it was, in practical effect, virtually indistinguishable therefrom.'" *Equitable Life Assurance Society v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1031–32 (S.D.N.Y.1985) (quoting *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 545–46, 493 N.Y.S.2d 435, 439, 483 N.E.2d 110, 114 (1985) (emphasis in original)).

Since the *Ultramares* decision, the doctrine of privity has been further refined. In *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977), the court took a broad view of the doctrine and extended accountants' liability to a fixed and determined group that was "within the contemplation of the parties to the accounting retainer." *Id.* at 361, 401 N.Y.S.2d at 478, 372 N.E.2d at 319. In *White* a limited partnership contracted with an accounting firm to prepare an audit and tax returns. A limited partner brought an action against two general partners for withdrawing funds in violation of the partnership agreement and against the accountants for failing to report the missing funds in their audit.

The court held the accountants liable because they "must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them in order to properly prepare his or her own tax returns." *Id.* Thus the *White* court found privity even though the plaintiff's personal reliance was not clearly the "end and aim" of the transaction.

Recent decisions have further clarified the meaning of a relationship "closely approaching privity." In *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), in interpreting *White* and *Ultramares*, the New York Court of Appeals listed three prerequisites to establish privity between accountants and non-contractual parties who rely on negligently prepared financial reports:

1) the accountants must have been aware that the financial reports were to be used for a specific purpose or purposes;

2) in the furtherance of which a known party or parties was intended to rely; and

3) There must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountant's understanding of that party or parties' reliance.

*Credit Alliance Corp.*, 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118.

Guildhall sufficiently alleges that the appraiser Silberman was aware of the "particular purpose," that is insurance, for which he was retained by O'Boyle. *See* Plaintiff's Answer to Defendant's Motion for Summary Judgment at 5. Thus, plaintiff has adequately addressed the first of the three *Credit Alliance* criteria. The second prong of the test is met by plaintiff's showing that the defendant knew an insurance company was to rely on the appraisal in issuing an insurance policy. *See* Defendant's Ex. 5. Finally, the third requirement is adequately addressed by alleging a special relationship between Silberman and the plaintiff. The appraisal in question certifies that it was made in accordance with the ethical code of the American Society of Appraisers. *See* Plaintiff's Ex. K, L. That code sets forth an appraiser's duty to third parties. Specifically, section 3.6 provides "It frequently happens that an appraisal report is given by the client to third parties for their use. These third parties may or may not be known to the appraiser but, regardless of this fact, they have as much right to rely on the validity and objectivity of the appraiser's findings as does the client. Members of the Society recognize their fiduciary responsibility to those parties, other than the client, who make use of their report." *Id.* Thus, although Silberman did not know precisely which insurance company would

ultimately rely on his representations, there was apparently a fiduciary duty owed by Silberman to that company. Such a duty could create a relationship which satisfies the third *Credit Alliance* criterion.

Plaintiff has thus fully addressed the issue of privity. Accordingly, defendant's motion for summary judgment on the ground that plaintiff has not adequately alleged a cause of action for negligent misrepresentation is hereby denied.

FRAUD CLAIM

■ Guildhall's second cause of action is for fraudulent misrepresentation. In order to prove fraud Guildhall must demonstrate 1) representation of material fact; 2) falsity of the fact; 3) intent to deceive; 4) reliance on the misrepresentation; and 5) injury. *See Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958). Silberman has moved for summary judgment on the ground that Guildhall failed to allege facts sufficient to demonstrate Silberman's "intent to deceive" Guildhall.

In actions for fraud at common law it is well settled that "even if affirmative intent to deceive cannot be established, the scienter element may be proven if there was gross negligence in making the misrepresentation." *Revlon Inc. v. Carson Products Co.*, 602 F.Supp. 1071, 1101 (S.D.N.Y. 1985), *aff'd*, 803 F.2d 676 (Fed.Cir.), *cert. denied*, ── U.S. ──, 107 S.Ct. 671, 93 L.Ed.2d 722 (1986); *see Ultramares*, 255 N.Y. at 190–91, 174 N.E. at 447 (gross negligence is evidence to sustain in an "inference of fraud.") Silberman's appraisal, almost ten times greater than subsequent appraisals, casts such doubt as to raise the question whether negligence existed which was so extreme "as to justify a finding that [he] had no genuine belief in its adequacy, for this again is fraud." *Ultramares*, 255 N.Y. at 189, 174 N.E. at 448. Accordingly, Silberman's motion for summary judgment on the second cause of action is denied.

ADDITIONAL GROUNDS FOR SUMMARY JUDGMENT

Silberman's other grounds for summary judgment are that a) Guildhall suffered no damage; b) if any damage was indeed suffered by Guildhall, it was not proximately caused by Silberman; and c) misrepresentations as to the monetary value of a work of art are not actionable. None of these grounds is sufficient to grant summary judgment.

■ a) Defendant's first contention, does not merit great attention by this court. By assuming that Guildhall suffered no damages, Silberman begs the question of whether the plaintiff was fraudulently or negligently induced by Silberman to insure the stolen artifacts at a value greater than $1.8 million. Guildhall paid this amount to O'Boyle. This court finds this to be a sufficient allegation of damages to deny summary judgment on this ground.

■ b) Silberman's second contention is equally without merit. In general "[a]n act is a proximate cause of an injury if it is in clear sequence with the result and if it could have been reasonably anticipated that the consequences complained of would result from the act." *Ouimet v. Humble Oil & Refining Co.*, 55 A.D.2d 855, 856, 390 N.Y.S.2d 497, 499 (4th Dep't 1976). It follows that

one making misrepresentations is liable to any party who could reasonably have been expected to have come into contact with such statements; thus, a party furnishing false information to a commercial credit bureau, to an administrative agency or to the public at large, may be held liable by third parties adversely influenced by those misrepresentations, since under familiar principles of law, the speaker should have foreseen reliance by unknown parties upon his statements.

*Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc.*, 424 F.Supp. 1118, 1124 (S.D.N.Y.1976). Under this standard, a jury may very well find that Silberman's misrepresentations were the proximate cause of Guildhall's injury. Accordingly, this ground for summary judgment is rejected.

■ c) Fraud requires a misrepresentation of material fact, the mere expression

of an opinion about value does not give rise to a cause of action. *CPC International Inc. v. McKesson Corp.*, 120 A.D.2d 221, 230, 507 N.Y.S.2d 984, 989 (1st Dep't 1986); *see Cristallina v. Christie, Manson & Woods International, Inc.*, 117 A.D.2d 284, 294, 502 N.Y.S.2d 165, 172 (1st Dep't 1986). However, a statement of monetary value can, in certain circumstances, be regarded as a representation of existing fact. *Cristallina* 117 A.D.2d at 294, 502 N.Y.S.2d at 172–73.

> Expressions of opinion by an expert can form the basis of a fraud action when the defrauded party reasonably assumed that the defendant's expertise informed his opinion. Where one party has superior knowledge of the facts, his expression of opinion implies that he knows facts support that opinion and that he is unaware of anything to the contrary.

*Buccino v. Continental Assurance Co.*, 578 F.Supp. 1518, 1524 (S.D.N.Y.1983); *see Magnaleasing, Inc. v. Staten Island Mall*, 428 F.Supp. 1039, 1042–43 (S.D.N.Y.), *aff'd*, 563 F.2d 567 (2d Cir.1977) (per curiam); *Cristallina*, 117 A.D.2d at 294–95, 502 N.Y.S.2d at 172; *West Side Federal Savings & Loan Association v. Hirschfeld*, 101 A.D.2d 380, 385, 476 N.Y.S.2d 292, 295 (1st Dept.1984). In addition, "statements of opinion may constitute actionable fraud where a present intent to deceive exists." *Magnaleasing*, 563 F.2d at 569. As Silberman held himself out as an expert appraiser, and as Silberman's intent is a material question of fact to be resolved, there exists a material question of fact as to whether Silberman's appraisal is a "representation of existing fact." Accordingly, summary judgment is denied on this ground.

### CONCLUSION

Defendant's motion for summary judgment is denied.

SO ORDERED.