**Douglas F. JOHNSTON, Wade Fergusuon, and James Cardone, Plaintiffs,**

v.

**Robert T. NORTON, Charles J. Burger, James E. Conant and Norton & Derose, Defendants.**

**No. 92 Civ. 6844 (HB).**

United States District Court, S.D. New York.

June 5, 1995.

Richard W. Cohen, Robinson Brog Leinwand Reich Genovese & Gluck P.C., New York City, for plaintiffs.

James E. Conant, Weston, CT, pro se.

Charles J. Burger, Boston, MA, pro se.

*MEMORANDUM AND ORDER*

BAER, District Judge.

This nonjury trial came on to be heard before me on February 28 and March 17, 1995. Plaintiffs, who invested a total of $200,000 in defendants' failed real estate development, bring this action to recover losses suffered as a result of defendants' alleged misrepresentation. Plaintiffs contend that defendants deliberately provided them with false and misleading information about the status of the real estate development during its pre-construction phase. Defendants claim that plaintiffs knew from the outset that the investment was risky and are now simply trying to recoup their loss through litigation. Defs.' Post–Tr. Mem. at 15. The complaint asserts fraud, negligent misrepresentation, and violations of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. The Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. For the reasons stated below, plaintiffs are awarded $200,000 in damages.

## I. BACKGROUND

In or about May 1990, pursuant to an offering memorandum, subscription agreement and escrow agreement, plaintiffs were solicited by defendants to purchase partnership units in "Shooter's Myrtle Beach Limited Partnership" (the "Partnership"). The relevant provision of the escrow agreement provided that the Partnership's offering would not close until it had received paid subscriptions for an aggregate purchase price of $2,500,000 and a "commitment" for funding from a financial institution of $3,000,-000. Parties' Agreed Statement of Facts ("ASF") ¶ 12.

In July and August of 1990, plaintiffs invested a total of $200,000 in the Partnership. By August 29, 1990, defendants had raised only $1,250,000 of the $2,500,000 equity required in the original offering plan. ASF ¶¶ 12, 18. Despite the undercapitalization, on that day, defendant James Conant sent the plaintiffs a letter (the "August 29 letter") stating that the financing was proceeding "more success[fully] than anticipated." Pls.' Post–Tr. Mem. Ex. 10 at 1. The purpose of the August 29 letter was to extend the deadline by which the capitalization conditions had to be met, to lower the amount of equity necessary to finance the project down to $1,500,000 and to raise the amount of outside financing to $4,000,000. *Id.* On September 30, defendants again requested that plaintiffs agree to extend the deadline for satisfying the capitalization conditions. Ex. 11. At this point, the defendants were unable to meet even the reduced equity requirement of $1,500,000. In addition, their principal funding source, Metlife, had backed out of the deal. ASF ¶ 25. The defendants closed on the Offering on October 12, 1990, with the plaintiffs' agreement, at a reduced equity level and absent any outside commitment for additional financing.

The partnership entered into a financing commitment agreement on February 14, 1991 with Greyhound Real Estate Finance Company. The Partnership first obtained funds on April 16, 1991. The restaurant opened on July 2, 1991. During its brief run, the Partnership lost money each month and experienced serious cash flow problems. It did not have sufficient funds to complete the planned marina and by the end of 1991, the Partnership had closed the restaurant. The plaintiffs lost all of their equity in the project.

## II. DISCUSSION

■ Under New York law, the elements of a negligent misrepresentation claim are (1) carelessness in making an incorrect statement; (2) making such statement directly and with knowledge, notice and expectation that another will rely upon it; (3) reliance by the complaining party on the statement to his or her detriment; and (4) a relationship between the parties sufficient to create the defendant's duty of disclosure to the plaintiff. *E.g., Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *White v. Guarente*, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315, 319 (1977). Plaintiffs bear the burden of proving negligent misrepresentation by a preponderance of the evidence. *Leucadia, Inc. v. Reliance Ins. Co.*, 864 F.2d 964, 972 (2d Cir. 1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989).

■ Plaintiffs have met that burden here. The substance of the letters of August 29, 1990 and September 30, 1990 and the testimony adduced at trial demonstrate defendants' material misrepresentations designed to induce plaintiffs to act. One of the main purposes of the escrow agreement was to insure that the investors were not participating in an undercapitalized project. Defendants' knowing misrepresentation, however, encouraged plaintiffs nonetheless to extend the deadline for capitalization by creating the illusion that the project was well capitalized and financing prospects were imminent, when in fact, the opposite was true. Trial Tr. 33–34 (Cardone); 99–100 (Johnston); 164 (Fergusuon).

## III. CONCLUSION

Judgment for plaintiffs is rendered in the amount of $200,000.

**SO ORDERED.**